# WILLIAM G. DAMM

*vs.*

# STATE OF MARYLAND.

*Abortion. Evidence: answers; admissible in part. Experts: hypothetical questions; opinion founded on testimony of some of the witnesses only; physicians.*

It is error to rule out the whole of an answer, if any part of it was admissible.                                                    p. 671

An erroneous ruling as to the admission of evidence does not present reversible error, when the same fact, sought to be proved is proved without objection by other evidence in the case.                                                    p. 669

When the testimony of an expert is to be based on the evidence in the case, it is generally preferable either to submit hypothetical questions to him, or to have him hear the evidence.                                                    p. 673

In certain cases, as for instance that of a physician, it may, in the discretion of the trial court, be sufficient if the expert's opinion be based on the evidence of some of the physicians who testified, without the necessity of basing it upon the evidence of all the physicians who testified, in cases where there is no contradiction between them.                                                    p. 674

*Decided April 6th, 1916.*

Appeal from the Circuit Court for Allegany County. (HENDERSON and KEEDY, JJ.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*David A. Robb* and *D. Lindley Sloan,* for the appellant.

*Albert C. Ritchie, the Attorney-General,* and *Frank A. Perdew, State's Attorney for Allegany County,* for the appellee.

Boyd, C. J.; delivered the opinion of the Court.

The appellant was convicted of manslaughter by abortion. Four bills of exception to rulings on the evidence are in the record, but the second and third, which related to a dying declaration of Mrs. Sutton, the deceased woman mentioned in the indictment, were abandoned. The only questions therefore presented to us for review are those contained in the first and fourth bills of exception.

First. Dr. Littlefield, a practising physician in Cumberland, testified that he was called to a private house in that city about 11:30 P. M. on Sunday, the 21st of March, 1915; that he was introduced to Mrs. Sutton, and on examining her he found her very sick. He was then asked to "tell the nature of her illness and how she was suffering to the jury?", and he answered: "From the symptoms I made a diagnosis of 'Septic Abortion.' Her pulse was 140, respiration 24, temperature 104-6/10. She gave a history of having something introduced into her uterus the day before, and the day before that."

The record then states: "To which answer the defendant objected; the objection was overruled by the Court. To which ruling of the Court in allowing answer to be admitted and to stand, the defendant excepted and prayed the Court to sign this, his first bill of exception," and the bill then concluded in the usual way—being signed by the two judges who sat. The record then proceeds: "Continuing, the said witness testified as follows: The diagnosis I made was that she was aborting; there was blood poisoning. She stated she had an instrument introduced into her womb on Saturday, that is the preceding day, in the morning, and Friday, in the morning. She was bleeding Saturday afternoon, and Sunday until sometime in the afternoon. Then bleeding sud-

denly ceased. She had a chill, a severe headache and became violently ill. She was extremely tender over the right lower part of her abdomen." The witness was then examined at length by the State's Attorney and on cross-examination.

There was no exception noted to the part of the testimony quoted above—beginning "Continuing, the said witness testified as follows:" In that he said, "She stated she had an instrument introduced into her womb on Saturday, that is the preceding day, in the morning, and Friday, in the morning." It was contended by the State that even if there was error in the ruling stated in the exception, it was not reversible error as it was repeated without objection in the subsequent evidence of the witness. It is also urged by the State that inasmuch as the dying declaration was subsequently admitted and it fully covered and included what was objected to in this exception, no possible injury was done the accused and hence there was no reversible error, even if it be conceded that the statement of the witness as to something having been introduced in her womb should have been excluded.

Technically the testimony set out in the record after the signatures of the judges in the first bill of exceptions may be said to have corrected the alleged error in permitting the witness to say, "She gave a history of having something introduced into her uterus," etc., as apparently that went in without objection. The exception states, "To which answer the defendant objected," etc. The answer there excepted to was, as the exception is drawn, what precedes the conclusion of the bill of exceptions, but assuming that so much as followed as a part of the answer to the question which elicited the answer was intended to be included in the exception, it seems to us to be clear that if we concede that it was error to permit the witness to speak of the history of "having something introduced into her uterus," it was harmless error. At a time when there can be no doubt about the admissibility of the statement of the deceased woman, as a dying declaration, and as we have seen the exceptions to its admissibility were abandoned, the following testimony was given—Dr.

Littlefield still being on the stand—"Q. Proceed and give the whole declaration? A. She said she had visited the office of Dr. William G. Damm on South Mechanic street, giving dates. Q. What dates were they? A. March; preceding days to what I saw her; March 19th and 20th, to the best of my recollection, and that he had introduced an instrument into her womb. I asked her if she was alone with him at the time; she said she was; and I asked her to describe the man, to give a brief description. Q. What did she say about the description? A. I asked her what she had paid him— That is in the declaration which I mentioned. Q. Did she state at that time what she paid him? A. Yes; twenty-five dollars ($25.00) for the first visit, and five dollars ($5.00) for the next visit." After some further testimony as to the description of the doctor and reference to a written declaration, which the witness said he wrote and Mrs. Sutton said was correct, and then signed it in the presence of two nurses in the hospital, where she was, the following was introduced in evidence: "I, Mrs. Lee Sutton, knowing that I am about to die, wish to state that Dr. Wm. G. Damm performed a criminal operation on me March 19th, and again on March 20th, 1915. I know that I am now dying as the result of the operation. Dr. Damm is a middle aged man, wearing a gray mustache, and only he and I were in the office." That is signed "Mrs. Lee Sutton," and was witnessed by the two nurses and Dr. Littlefield.

On cross-examination the fact that an autopsy was performed by Dr. Littlefield, assisted by Dr. Claybrook was brought out. He said they found what looked as if it had been a puncture. He said: "There was no hole there at the time I had the autopsy; simply a highly hemorrhagic tract" —that "after I found the hemorrhagic tract, I took a knife and followed it up." This witness was examined at great length on cross-examination. He said he first saw her March 21st and a collapse came the evening of April 8th. The latter was the date when she signed the declaration. Dr. Littlefield said she told of what Dr. Damm had done seven

or eight times. The two nurses also testified as to the dying declaration, which was signed on Thursday, and she lived until Saturday. On the latter date she told Dr. Littlefield that she recalled the declaration and it was correct.

When all of these facts are taken into consideration it is not possible to perceive any injury that could have been done the appellant by the statement made by Dr. Littlefield which is objected to, if it be conceded to have been error in allowing it to remain in. He did not then state who she said had introduced the instrument and was only giving it in explanation of his diagnosis. It was not offered to prove the fact of the introduction of the instrument, but merely mentioned by the doctor in connection with his diagnosis. If the deceased had died without making any statement which could properly have been introduced as a dying declaration, then assuming, as we are now doing, that there was error in this ruling, it might be said to have been injurious error and hence reversible, but inasmuch as it is shown without objection—indeed brought out on cross-examination by the appellant—that Mrs. Sutton spoke of the matter to Dr. Littlefield six or seven times during her stay in the hospital, to which she was removed the night he first saw her, and as her statements made under circumstances that justified their admission are dying declarations were offered in evidence to prove the fact, we can not see how it was possible for the accused to have been injured by the answer of Dr. Littlefield included in the first bill of exceptions. Many decisions of this Court might be cited to show that when evidence is admitted over the objection of an appellant, which was inadmissible, if the same evidence is afterwards admitted without objection it is treated as harmless error. If then its admission be improper at first by reason of conditions not being shown which authorized its admission, but afterwards conditions were clearly proven which make it admissible beyond question, and it is so admitted and repeated, not merely once but a number of times, without objection and without any grounds upon which objection could have been founded, how is it possible to say that there was injury as well as error?

That would be so, even if it had originally been admitted for the purpose of proving the fact, and there is certainly much less danger of injury when it is merely stated by a physician in explanation of a diagnosis he made. Possibly there might be circumstances where it could be said that there was danger of the jury treating the evidence which was inadmissible at the time as corroborative of it when it was properly admitted. But it would be altogether improbable that such a statement of a person then dead narrated by a physician in explaining his diagnosis, would have any effect upon the minds of jurors, or make any impression on them, after they had heard repeated over and over again much stronger and more definite statements of the same facts as coming from that same person, which were made at a time which must and does carry more weight than under almost any other circumstances. If dying declarations are made under conditions which relieve them of doubt as to whether the declarants fully understood what they were saying and of danger of their having been misled or in any way imposed on, no species of evidence is usually more convincing. It would indeed be a herculean, not to say impossible, task to convince a jury that the statements of a woman, when she knew she was dying and who according to the uncontradicted evidence of a physician and two nurses, was perfectly conscious, were false, if they could be influenced by a statement made by her as the one in this exception was. It therefore seems to us impossible that any injury was or could have been done the accused by that ruling. ·

In *Meno* v. *State,* 117 Md. 435, evidence that the accused, who was being tried on a similar charge to this, had been guilty of other acts was held to be inadmissible, but as we thought the answer of the witness "was so vague and inconclusive that the traverser can hardly have been injured thereby," we said we would not reverse the judgment for that error alone. The case of *Avery* v. *State,* 121 Md. 229, was a criminal case in which we said there can be no reversal for error without injury, and the rule is too thoroughly established to require us to cite other cases.

We are therefore of opinion that, conceding the ruling in the first exception to have been erroneous, it was not reversible error for the reasons we have given. It may be well to add that we find that the weight of authority seems to be against permitting a physician to testify as to what the witness said as to the cause of the injury or the instrument used, unless of course it is a dying declaration or there be something which calls for the statement—for example, when on cross-examination a physician who has given his diagnosis of a case is asked upon what he based it. The decisions are by no means in harmony, and some of those which hold that evidence of the statement by the patients to the physician of the cause of the injury or the instrument used can not be given by the physician are not based on very satisfactory grounds, but we believe the weight of authority sustains that view. See 24 *Am. & Eng. Ency. of Law* 670; 16 *Cyc.* 1162, 1165-66; 3 *Chamberlayne on Modern Law of Ev.,* sec. 2635; 1 *Wharton on Cr. Ev.,* sec. 271; *Hays* v. *State,* 40 Md. 633; *McCeney* v. *Duvall,* 21 Md. 166. The case of *Baltimore* v. *Hurlock,* 113 Md. 674, was much relied on by the State but it does not altogether meet the question.

Inasmuch as the question intended to be raised was fully argued we have considered it, but as the exception is presented it does not show error on the part of the Court. The whole answer was objected to, and the exception was to the ruling of the Court in allowing "answer to be admitted and to stand." The whole answer was not objectionable, even according to the contention of the appellant, and hence it could not have been stricken out as a whole. The objection should have been made to the particular part deemed objectionable, or a motion made to strike out that part. There was therefore no error in the Court's ruling as presented by the first bill of exceptions.

Second. The only remaining exception which is pressed is the fourth. That arose in this way: Dr. Charles S. White of Washington was called as an expert. He arrived in Cumberland after Dr. Littlefield had testified, but he heard the

testimony of Doctors Claybrook, Cowherd, Franklin and Owens and of the two nurses. He was asked: "Doctor, were you able to, and did you form a diagnosis of this case, from what you heard here?", and replied, "Yes, I have formed an opinion." Then he was asked: "Assuming that the testimony that you have heard from these various doctors is true, were you able and did you form an opinion of what was wrong with Mrs. Sutton—what ailed Mrs. Sutton," and answered, "Yes."

He was then asked the following question: "Well, then, omitting, leaving out the declaration of Mrs. Sutton, but including all you have heard from the doctors' testimony, nurses' and also at the autopsy?" That was objected to and the objection was overruled. The witness answered: "In my opinion, Mrs. Sutton came to her death from peritonitis induced by infection—pelvic inflammation which was induced by an abortion." The ruling of the Court was excepted to, and is presented by the fourth bill of exceptions.

Dr. White heard the testimony of Doctors Cowherd, Claybrook, Franklin and Owens and of the nurses, but did not hear that of Dr. Littlefield. Dr. Cowherd first saw the patient Sunday night, March 21st, at the hospital. He went there at the request of Dr. Littlefield who upon examining the patient that night had advised her to go to the hospital immediately, and after consulting with her husband she agreed to do so. The doctors arrived at the hospital before she did. Dr. Cowherd administered the anesthetic and he described what was done by Dr. Littlefield, which he said was the recognized treatment for the trouble. He stated what her pulse and respiration were but said he did not take her temperature, which was very high. He said her "suffering seemed to be pretty general, lower part of her abdomen. Didn't go into the case very thoroughly; asked a few questions as I would a patient whom I was going to give an anesthetic." He saw her again the following Tuesday and then on April 7th and April 9th, and was at the autopsy. He described the conditions he found on these different occa-

sions.   His testimony in chief and on cross-examination,
cover ten or eleven pages of the printed record.   Dr. Clay-
brook saw her on March 25th and again on April 2nd and
two or three days after that he assisted Dr. Littlefield in a
second operation on her.   The next day he saw her again.
He was at the autopsy and explained her condition the dif-
ferent times he saw her and what they found at the autopsy.
Dr. Franklin saw her two or three days before her death
and got to the autopsy as they had about finished.   He also
explained what he saw.   Dr. Owens administered the anes-
thetic at the second operation, on April 5th, and explained
what he saw and what was done then.   Mrs. Mitchell was
called as a nurse on April 5th, the day of the second opera-
tion and nursed her until her death.   Miss Amtower, the
other nurse, was night superintendent the night Mrs. Sutton
went to the hospital.   She did not nurse her until after Mrs.
Mitchell was called in the case and then she relieved Mrs.
Mitchell.

While it is true that Dr. Littlefield was examined more
at length than the other physicians, it has not been shown
that his testimony was in any respect in conflict with that
of the other physicians, and so far as we can see it would
likely have had the effect of confirming Dr. White and not
of changing his opinion.   When the testimony of an expert
is to be based on the evidence in the case, it is generally pre-
ferable either to submit hypothetical questions to him or to
have him hear all of the evidence.   In most cases that is
more satisfactory, and in some necessary, but when there are
several doctors who have been with the patient as these were,
no good reason can be assigned for requiring an expert to
hear all of them, if there is no conflict between them, but on
the contrary they agree, in order to permit him to testify.
In 1 *Wigmore on Evidence,* sec. 681, it is said: "A question
assuming the truth of the testimony of *several specified wit-
nesses* may very well suffice, if the facts they testify to are
likely to be definitely in the minds of the witness and the
jury.   This must depend on the circumstances of the case.

There should be no fixed rule excluding such a question; and in the precedents it can hardly be said that a fixed rule is intended to be laid down." Something must be left to the discretion of the trial Court in such matters, although of course if the appellate Court can see that injury has been done or may have been done the accused by permitting an expert to give an opinion based on part only of the testimony it should be corrected.

Several decisions of this Court are apposite. In *Davis v. State,* 38 Md. 15, Abraham L. Lynn was found dead in the sink or bin of his mill. Six wounds were discovered on his head, one of which the examining physician pronounced mortal. Davis, an employee of the deceased was convicted of murdering him. Doctor Billingslea had heard Dr. Manakee describe the wounds on the head and the fractures on the skull, and heard several witnesses describe the construction and condition of the sink, it was held to be competent for him to say whether such wound and fracture was likely to have been occasioned by accidentally falling into the sink. On cross-examination the witness said he had not heard the entire testimony of Doctor Manakee. The counsel for prisoner asked the Court to strike out the opinion of the witness, but it refused to do so. In passing on that ruling this Court, through JUDGE ROBINSON, said: "In some cases, it may be proper for the Court to refuse to allow an expert to give his opinion upon facts proved by a witness, unless he has heard all the testimony of the witness, because in such cases the entire testimony may be necessary, in order to enable him to form an opinion in regard to the subject-matter of inquiry. But here, the witness had heard the examining physician describe fully the nature and character of the injuries, and had heard several witnesses describe the construction and condition of the bin or sink, and upon these facts we think it was competent for him to say whether such injuries were likely to have been occasioned by accidentally falling into the sink, although he was not in fact, present during the whole cross-examination of the witness. If the cross-examination elicited anything new in regard to the wounds or the sink,

different from what was testified to in the hearing of the
witness, the prisoner could have inquired of the witness,
whether such facts affected in any manner the opinion he had
formed.   After all, the opinion of the witness, and the
grounds upon which it was formed, and the weight to be
attached thereto, were matters for the consideration of the
jury."

In that case Dr. Scott said he had given the subject little
thought, "had not heard *all the evidence* describing the
*wounds* and the sink, but had heard occasional parts there-
of—had seen the skull of the deceased produced in Court
and examined the fractures thereon, and had seen the model
of the sink which had been offered in evidence, and examined
it."   The State then asked the doctor, "whether from the
nature and character of the fractures on that skull, as now
shown you, such fractures could have been, or were likely to
have been produced or inflicted accidentally by falling into
the sink, in the condition in which the sink had been de-
scribed by the witnesses."   The Court said: "Now if the
opinion of the witness which it was proposed to give in evi-
dence had been based upon the description of the wounds and
the sink, as testified to by other witnesses, there might be
some ground for contending that a proper foundation had
not been laid for the introduction of such evidence.   But
here the witness had examined the skull and the model of the
sink, and upon this examination, together with such descrip-
tion of the construction and condition of the sink as he had
heard from other witnesses, we are of opinion it was com-
petent for him to answer the question."

It will be observed that JUDGE STEWART in his dissenting
opinion on pages 55 and 56 differed with the majority as to
both of those rulings, on the ground that the doctor had only
heard parts of the testimony, but the majority of the Court
held the evidence was admissible in each instance.

In *Negroes Jerry et al.* v. *Townshend,* 9 Md. 145, the
question was asked, based on the evidence of the witnesses
for the defendant—being before any rebutting proof had

been offered. The ·Court said that when the question is upon
the hypothesis that the testimony given is all true it is virtu-
ally putting an hypothetical state of case to the witness from
which his opinion is given and it was sustained. In *City
Pass. Ry. Co.* v. *Tanner,* 90 Md. 315, the Court said: "The
experts simply based their opinions upon the facts given in
evidence that were not disputed. This was competent evi-
dence and clearly within the rule under the circumstances."
An examination of the record in that case shows that the
opinions were not based on the testimony of all the witnesses
—on the contrary the question propounded to one of the
physicians was expressly limited to the description of the
accident as testified to by the plaintiff, in the hearing of the
witness, and the condition of the plaintiff, as testified to by
Dr. Lyman, the third day after the accident. It is true that
Dr. Lyman was one of the attending physicians, but it shows
that this Court does not always require the opinion of the
expert witness to be based on all of the testimony. This case
is cited in the note to 1 *Wigmore on Evidence,* sec. 681,
quoted above.

The authorities differ as to the wisdom of permitting ex-
perts to express their opinions based on the evidence in a
case, instead of submitting hypothetical questions to them,
but in this State it is permissible, and if Dr. White had
heard Dr. Littlefield as well as the others we do not under-
stand that his right to express an opinion based on all of the
evidence would have been questioned. Inasmuch as there
was no conflict between Dr. Littlefield and the other physi-
cians, and the facts given in evidence on which Dr. White
based his opinion were not disputed, the traverser could not
be injured. The record concludes with Dr. White's evidence
and does not give any offered by the traverser, but if there
was any produced by him which did dispute any of the facts
stated by the doctors produced by the State, which could
affect Dr. White's opinion, the remedy was to recall him and
submit the additional facts which made the dispute, so as to
see whether they changed or affected his opinion, if that was

deemed desirable, or in some way bring the new matter before the lower Court. In *Grill* v. *O'Dell,* 113 Md. 625, the testimony of the caveator during her examination in chief was suspended in order that Dr. Brush might be called to the stand. That was objected to because it permitted Dr. Brush and other experts to give their opinion as to the incapacity of the testatrix on a hypothetical question which would not include the facts to which the caveators might testify. The hypothetical question was propounded to him and Doctors Stuart and Van Bibber. On page 640 JUDGE URNER referred to the objection that the question did not include certain features of the testimony given by the caveator after the question had been formulated, submitted and answered. He said: "If the hypothetical question was proper under the evidence before the jury and the time it was propounded, then it was not error to overrule the objection interposed at that juncture. If the caveatee had desired to challenge the sufficiency of the question in view of subsequent evidence adduced by the caveator, there should have been an appropriate motion to that end, and a denial of such motion would have furnished the basis for an exception which this Court might consider." If there was any conflict in the evidence of Dr. Littlefield with that of the other doctors, or anything in it which might have affected the opinion of Dr. White, it could have been brought to his attention and to that of the lower Court, but it was not done and no such evidence is now pointed out.

Of course this Court does not pass on the guilt or innocence of the accused, but only upon the action of the lower Court, as presented by the record. As after a very thorough consideration of the two points relied on, which were very ably and forcibly presented to us, we are convinced that there was no reversible error in the rulings of the lower Court, we must affirm the judgment.

> *Judgment affirmed, the costs to be paid by the appellant.*