## CHARLES P. CAREY *v.* STATE OF MARYLAND.

[No. 25, April Term, 1928.]

*Decided June 22nd, 1928.*

476

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Fendall Marbury,* for the appellant.

*John Hubner Rice, Assistant Attorney General,* and *Herman M. Moser, Assistant State's Attorney for Baltimore City,* with whom were *Thomas H. Robinson, Attorney General,* and *Herbert R. O'Connor, State's Attorney for Baltimore City,* on the brief.

PATTISON, J., delivered the opinion of the Court.

The appellant, Charles P. Carey, was jointly indicted with Benjamin F. Spragins in the Criminal Court of Baltimore City for murder. The case of Spragins was removed to the Circuit Court for Baltimore County, where he was tried and convicted of murder in the first degree, and sentenced to death. Carey's case remained in the Criminal Court of Baltimore City, where he was tried and likewise convicted of murder in the first degree and sentenced to be hanged. It is from that judgment that the appeal in this case was taken. In the trial of the case twenty-three exceptions were taken to the court's rulings upon the admissibility of evidence.

Both Carey and Spragins were, at the time of the commission of the offense, confined in the Maryland Penitentiary, Carey serving a life sentence, and Spragins a term of years. On July 5th, 1927, they attempted to escape from that institution and, in the attempt, Alfred H. Walker, a guard, was killed, and Carey was twice shot. After the excitement incident thereto had subsided, Carey was carried to the prison hospital for treatment, and while there, he, on the eighth day of July following, made a statement, in the

form of questions and answers, of his participation in the attempted escape and the killing of Walker, to Herbert R. O'Conor, state's attorney for Baltimore City, in the presence of Herman M. Moser, his assistant, Patrick J. Brady, warden of the Maryland Penitentiary, and Robert B. Ely, one of the official court reporters, who reduced the statement to writing.

The third exception was taken to the admission of this statement in evidence. The ground of the exception being that the State had failed to show that it was voluntarily made by the appellant and that it was not obtained from him by improper means.

The law is well settled, in this state, that before a confession, or statement of the character of the one before us, becomes admissible in evidence, it must be shown, to the satisfaction of the court, that it was freely and voluntarily made and not obtained by threats, or promises of advantage to the defendant to be derived therefrom, and the burden of showing affirmatively that it was freely and voluntarily made, and not induced by wrongful means, is upon the State. *Nicholas v. State,* 38 Md. 140; *Biscoe v. State,* 67 Md. 6; *Ross v. State,* 67 Md. 289; *Rogers v. State,* 89 Md. 424; *Deems v. State,* 127 Md. 624; *Dobbs v. State,* 148 Md. 34.

As was said in *Biscoe v. State, supra,* "There is no difficulty in regard to the rule itself, the trouble is in the application of the rule to the facts of each particular case, that is, whether it was a free and voluntary confession, or whether it was procured by the influence of another under a hope of favor or advantage if made, or fear of harm or disadvantage of some kind if withheld. It is not, of course, an easy matter to measure in all cases the force of the influence used, or to decide as to its precise effect upon the mind of the prisoner; much, very much, we may add, depends upon the age, the experience, the intelligence and character of the prisoner. And it may be, that courts leaning to the side of mercy, have in some cases, excluded confessions, when it is difficult to see how the alleged inducement had any influence on the mind of the prisoner."

The reasons for the rule are very clearly and convincingly told in *Wharton's Criminal Evidence,* par. 622e, and the ultimate test in all cases is, "Was the situation such that there was a reasonable probability that the accused would make a false confession?"

In this case, the State, in the assumption of the burden so imposed upon it by this rule, placed upon the stand as witnesses those persons who had been in immediate charge of Carey between the time of the shooting and the confession. These were Earl H. Owens, who was on duty between 8 A. M. and 4 P. M., Charles A. Schultz, between 4 P. M. and midnight, and William F. Denton, between midnight and 8 A. M. Owens testified that while the appellant was in his charge neither he nor any one else said anything to Carey about the case. Schultz testified that nothing was said by him or by any other persons to Carey about the shooting, while witness was on duty. Denton, when asked if he or any one else had conversations with the defendant, said he had never heard it mentioned while the appellant was in his charge. Patrick J. Brady, the warden, who saw Carey every day during the period between the shooting and the time when the confession was made, testified that only on two occasions, the fifth and the eighth of July, was the case discussed, and at neither of those times did he or any one else make any promises to the defendant.

It was said by Brady that, before the statement was made, the state's attorney said to Carey "something along the line that it (the statement) may be used against him and was asked if he wanted the stenographer to take it down," and Carey said "Yes." After the statement was made, the state's attorney said to Carey, "Well, now, Country (Charles P. Carey), let me make this plain to you. If there is anything you want to say, even anything I haven't asked you about, that would explain your position, you can do so, you are at perfect liberty to say it. Of course, as I told you from the outset, I can't offer you anything?" Carey replied, saying, "Well, you know me well enough to know that I don't want any immunity or anything."

It is contended by the defense that the evidence produced by the State was not sufficient to show that the statement was voluntarily made without threats or improper inducements. The question as to the admissibility of the statement in this case, like other preliminary questions, was one to be determined by the court upon the facts and circumstances produced in evidence, and, to have held it admissible, the court should have been satisfied from such evidence that the statement was freely and voluntarily made and not obtained by wrongful means, and in the determination of this question is involved the inquiry, "Was the situation produced by that evidence such that there was a reasonable probability that the accused would make a false statement" or confession, and this, as we have said, was the ultimate test to be applied in determining the admissibility of the statement, and if it were found that there was no such reasonable probability, then the court was right in its ruling in admitting the statement.

In this case it is not claimed by the defense that any threat or wrongful inducement was made to obtain the statement. It contends, however, that the State has not produced evidence sufficient to show that there were no threats or improper inducements made inducing the appellant to make the statement. The omissions complained of by them are: (1) That while Brady testified that he "made no promises on the 8th (July) or promise or threat between the fifth and the eighth," and that he also "made no promise on the fifth * * * he nowhere says that he made no threats either on the fifth or eighth." (2) That Schultz testified that *he* had no conversation with Carey, but he did not say *no one else* had a conversation with Carey concerning the shooting. (3) That "threats or promises might have been made to Carey during this guard's shift," or at other times by persons who had interviews with him, though the names of such persons are not shown by the record. As to these omissions, counsel for the appellant states that, had Brady been asked if any threat was made on the fifth or eighth of July, he, no doubt, would have answered in the negative; and had Schultz been asked

if others had conversations with Carey while the latter was in his charge, he, in all probability would have answered "No," but he was not required to make these inquiries, inasmuch as the burden was upon the State to show the existence of those facts.

The evidence produced by the State, without contradiction, or attempted contradiction, and with no claim that any threats or promises were made, was, upon the application of the above stated rule, sufficient, without the suggested omissions, to justify the court's conclusion, reached in the exercise of the discretion reposed in it in the determination of these questions (*McCleary v. State,* 122 Md. 404), that the statement of Carey was not obtained by wrongful means and was admissible in evidence.

The first exception was taken to the action of the court in overruling an objection to a question asked Warden Brady by the court. The witness had testified that he saw the appellant a number of times between the time of the shooting of Walker and the 8th day of July following, when the statement was made by Carey, but only on two of these occasions, July 5th and 8th, when the state's attorney was present, was there anything said about the shooting. At the end of his cross-examination, Brady was asked by the court: "Now, Mr. Warden, I am not quite sure that I understand you on this point. Did you say that on both July 5th and July eighth, in the presence of the state's attorney, there was some talk had about this shooting affair," and his reply was, "Yes, your honor." "Q. Well, then, I understand you to say in regard to the conversation on July 8th that the state's attorney made no promises of any kind? A. That is right. Q. To Mr. Carey? A. No, your honor. Q. Now, I would like you to tell me about the conversation had * *.* on July 5th, as to whether or not any promises were made by the state's attorney, then?" The defense objected to this last question on the ground that it was leading and, the objection being overruled, the witness answered, saying there were no promises made at any time. It was to this ruling of the court that the first exception was taken. The question was

asked by the court in the preliminary examination then being made by it as to whether the statement made by Carey was wrongfully obtained by the use of threats or promises inducing him to make it. This question asked by the court, under the circumstances and for the purposes stated, was not, we think, subject to the objections urged against it; if so, the court in its ruling thereon committed no reversible error.

The subject of the fourth exception was the refusal of the court to allow the defense to ask the witness Brady why the coat worn by Walker when shot was not offered in evidence at the trial of Spragins in the Circuit Court for Baltimore County, while the fifth exception was to the rejection of a proffer made on the part of the appellant to prove by Brady that the coat was not offered in the trial of Spragins.

Warden Brady did not conduct the trial of Spragins and it was not shown that he knew the reason, if any, why the coat was not put in evidence at that trial, but, if he knew and could have given the information sought, it would have been clearly irrelevant. The state's attorney who tried that case was not required to introduce the coat in evidence, and the fact that he did not do so could not properly have affected the verdict in the case then on trial. The court was right in its refusal to allow either of these questions to be answered.

The sixth and eighth exceptions were to the rulings of the court in refusing to allow the appellant to ask Brady, first, if he thought the hole in the coat worn by Walker was a bullet hole, and, second, whether he was satisfied at the time he examined it that it was a bullet hole. The witness, in an answer to a previous question, had said that he did not know that it was a bullet hole, and, had he been permitted to answer the question, "if it looked like a bullet hole," his answer would have been a mere conjecture. He had not qualified as an expert on the subject, and to have allowed him to answer the question, the court, by so doing, would have submitted to his determination a question which the jury alone should have decided. *Capital Traction Co. v. McKeon,* 132 Md. 179. The court in its ruling in this as

well as in the eighth exception, in which the witness was asked if he was satisfied that the hole in the coat was a bullet hole, committed no error.

Brady, when upon the stand, was asked if he had with him the shirt worn by Walker when the latter was shot. His answer was that he did not have it, and when asked what had become of it, he said it was torn or cut off of Walker by the doctors, and he did not know what they did with it; that it had never come into his possession. He was then asked if he did not think the shirt was an important piece of evidence. To this question an objection was made and sustained, to which ruling an exception was noted. This constitutes the seventh exception. What the witnesses thought of the shirt as a piece of evidence was both irrelevant and immaterial, and was properly excluded.

After the ruling on the last exception counsel for appellant stated to the court that he "wanted to get to the bottom of why he (Brady) paid no attention to the shirt" and "to know his (Brady's) reasons for not making any effort to keep it." The court called counsel's attention to the evidence of Brady, in which he accounted for the absence of the shirt at the trial, then followed a colloquy between the court and counsel, and finally the court said "Yes, I will ask him this question in my way. Mr. Brady, did you personally do anything, either directly or indirectly, to conceal that shirt or to prevent it being brought here for trial?" Answer, "No, your honor." An objection was interposed thereto on the ground that the question was leading and, the objection being overruled, the ninth exception was taken.

This question was asked, it would seem, because of the insistence of Carey's counsel to further interrogate the witness as to his motive in not caring for and producing the shirt of Walker. The witness had accounted for its non-production at the trial, which was thought by the court to be sufficient, but to satisfy the counsel of Carey he asked the question objected to. After it had been asked and answered the objection thereto was made and, though the question may have been leading in form, it was not, under the circum-

stances stated, objectionable to the extent of holding that the court in asking it committed a reversible error.

The tenth, eleventh, twelfth, thirteenth, fourteenth, fifteenth, sixteenth, seventeenth, eighteenth, nineteenth, twentieth, twenty-first, and twenty-second exceptions were taken to the ruling of the court in allowing the witness Brady, upon re-direct examination, to testify to a bullet hole in the partition separating the lobby of the penitentiary from an adjoining room, when it had not been adverted to in the cross-examination. This objection relates to the 'order of proof, which was within the trial court's discretion, and the ruling is therefore not subject to review on appeal. *Mullan v. Belbin,* 130 Md. 313; *Baltimore v. Leonard,* 129 Md. 621; *Baltimore v. Carroll,* 128 Md. 68.

In the twenty-third exception the evidence sought to be elicited by the question objected to, which objection was sustained, was clearly irrelevant, and was not referred to either in the brief or oral argument of the appellant.

Finding no error in the rulings of the court below, the judgment appealed from will be affirmed.

*Judgment affirmed, with costs.*

ADKINS, J., dissents.