## LINKINS *v.* STATE
[No. 119, October Term, 1952.]

*Decided April 17, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE. COLLINS and HAMMOND, JJ.

*Lloyd R. Kuhn* for the appellant.

*Kenneth C. Proctor, Assistant Attorney General,* and *John S. Hollyday, State's Attorney for Washington County,* with whom was *Edward D. E. Rollins, Attorney General,* on the brief, for the appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal by Daniel Linkins, Jr., from a judgment entered on a verdict of guilty of assault with intent to rob, larceny, and common assault. The case was tried by the trial judge and a jury.

Appellant was indicted for robbery, assault with intent to rob, larceny, and assault and found not guilty of robbery. Appellant filed a motion to dismiss the indictment on the grounds that it "does not sufficiently describe the goods and chattels which the defendants [appellant] are [is] charged with robbing or attempting to rob," and that the description of the goods and chattels allegedly taken does not sufficiently inform the defendant of the charge so that he can prepare his defense thereto. This motion was overruled. As he was found not guilty on the first count for robbery, he is not prejudiced by the action of the trial court in overruling his motion to that count. The second count charges that the appellant did "make assault with intent the moneys, goods and chattels of the said Conrad Eugene Baker from the person and against the will of the said Conrad Eugene Baker then and there forcibly, feloniously and violently, to rob, steal, take and carry away, * * *." We find no requirement that in a count for assault with intent to rob that the goods and chattels be listed or described. Code, Article 27, Section 14; *Hollohan v. State,* 32 Md. 399. This count is not one for assault with intent to rob with "a dangerous or deadly weapon" where the listing of the property is required by the statute, Code, Article 27, Section 575. The third count of the indictment charges the appellant with "one wallet of the value of fifty cents of the property goods and chattels of one Conrad Eugene Baker then and there being found, did then and there unlawfully steal, take and carry away * * *". It was

said by this Court in the case of *State v. Lassotovitch,*
162 Md. 147, at page 156, 159 A. 362, at page 366, 81
A. L. R. 69, in defining the general requirements of a
valid indictment: "Every charge or accusation, whether
at common law or under statute, must include at least
two elements: First, the characterization of the crime;
and, second, such description of the particular act al-
ledged to have been committed by the accused as will
enable him to properly defend against the accusation.
In statutory crimes, where the statute includes the ele-
ments necessary to constitute a crime, the first of these
requirements is gratified by characterizing the offense
in the words of the statute; the second requires such
definite and specific allegations as reasonably to put the
accused on notice of the particular act charged, to enable
him to prepare a defense and plead the judgment in any
subsequent attempted prosecution." It is said by *Hoch-
heimer* on *Criminal Law,* 2nd Edition, *Larceny—Indict-
ment,* Section 374, Page 410: "There must be proper
averments of the thing taken and of ownership. Very
particular descriptions of goods and chattels are not
necessary. Such descriptions, as the following are suffi-
cient: 'one hide' [*State v. Dowell,* 3 G. & J. 310]; 'a
horse;' 'one watch;' 'a book;' 'one cape.'" Apparently
the demurrer to the fourth count for common assault is
abandoned here. We are of opinion that the motion
to dismiss the second, third and fourth counts of this
indictment was properly overruled.

The appellant contends that the Court erred in ad-
mitting his confession in evidence as voluntary. He was
eighteen years of age. The testimony before the trial
judge as to whether this confession was voluntary fol-
lows: Trooper Richard A. Myers testified that he and
Trooper Hasenbuhler were at Police Headquarters when
the appellant came in. He was interrogated in the As-
sembly Room for possibly fifteen or twenty minutes. At
that point the jury was excused and the following state-
ment was made by State's Attorney John S. Hollyday to
the trial judge: "I want to show that during the 15

to 20 minutes this boy was impudent and finally I said we would not fool with him, lock him up and Trooper Hasenbuhler searched him and took him to the cell. The other boys talked and I wanted one of them to make an admission so I asked him and Trooper Myers and myself went back with him; we said 'Barnes were you out there and was Danny with you'; he said, 'My God, Foltz forgot to get rid of the pocket book', then he told his story. The following morning Trooper Myers and myself were there with Thelma Hartle, she was standing by and they were called in one at a time and we took statements from them." Trooper Myers then resumed his testimony and said that during this fifteen minutes "he [Linkins] was very arrogant, argumentive, refused to answer anything, did not know what we were talking about, about the car, about the boy being beaten up. At that time he said he did not know anything. Then he gave some smart remark back at which time he was told he would be locked up and Hasenbuhler searched him and put him back in the police lock up, fourth floor; we came back in and I talked to you [Mr. Hollyday] and decided we would take one boy in to talk to Linkins to tell him. We took Barnes and you, Barnes, and myself went to the cell. You asked Barnes in the presence of Mr. Linkins, the two were right there, whether he was near the Fox Deceived Farm at which time Barnes said to appellant, 'Well, Danny, you might as well tell them everything, Foltz had the pocketbook on him'." Appellant then said "O. K. I will admit to it, I was with them. * * * O. K. I will admit I was a partner." Trooper Myers further testified that no promises or threats of any kind were made to the appellant. On cross-examination Trooper Myers said that after appellant made the above statement he was told he would be locked up and then he said "Well, I won't be locked up too long because he would get a lawyer". Appellant at no time asked for a lawyer. Mr. Hollyday, the State's Attorney, then told him that was his privilege. Mr. Hollyday testified that the written statement was taken

from the accused the next morning, Saturday, at 11:10 A.M. When asked whether the only reason appellant was not given a preliminary hearing the next morning was to take the statement, Mr. Hollyday replied: "I would not say that. I do not recall when the warrant was gotten out."

The appellant contends, among other things, that because of the fact that he was only eighteen years of age; was held at least twelve hours before the written statement was taken; and because he was refused an attorney, for whom he had expressed a desire prior to the taking of the confession, it should not have been admitted in evidence. He relies strongly on the case of *Haley v. State of Ohio*, 332 U. S. 596, 68 S. Ct. 302, 304, 92 L. Ed. 224. In that case defendant was convicted of murder in the first degree and sentenced to life imprisonment. The accused was fifteen years of age and about midnight the police took him from his home to police headquarters. There he was questioned for about five hours by at least five police officers who interrogated in relays of two or more. About 5 o'clock in the morning this procedure resulted in what the police regarded as a confession. Whereupon it was formally reduced to writing. During the course of the questioning the boy was not advised that he was not obliged to talk nor that he was entitled to have the benefit of counsel or the help of his family. Justice Douglas, writing the majority opinion for the Supreme Court, in which Justices Black, Murphy and Rutledge concurred, held that the confession was involuntary and should have been excluded. Justice Frankfurter, concurring in the result, indicated that he was of the opinion that a youth of fifteen years of age could never make a voluntary confession. Justice Burton, in a dissenting opinion, concurred in by Chief Justice Vinson and Justices Reed and Jackson, held that they were not in a position, on the basis of mere suspicion, to hold the trial court in error in admitting the confession and to conclude "that this was a confession wrung from a child by means which the law should not sanction",

and were of opinion that the confession was properly in evidence. The appellant here was not fifteen but eighteen years of age and had been married. According to all the testimony he was not questioned for longer than fifteen or twenty minutes before he made his confession. The officers deny that he requested a lawyer before he made the confession but that he said he would not stay in prison long because he would get a lawyer. In *Cox v. State*, 192 Md. 525, 64 A. 2d 732, the appellant, twenty years of age at the time of the crime, was convicted of murder and sentenced to death. He was arrested at 12:30 A.M. on May 26th and questioned intermittently until 10:50 A.M. on May 28th when he made his confession, before a preliminary hearing. We decided, in holding the confession admissible, that the mere fact that the accused was under arrest at the time the confession was made and that he was in the custody of the police when he confessed and before he had an attorney did not of itself make such a confession inadmissible. In *Grear v. State*, 194 Md. 335, 71 A. 2d 24, Grear was arrested at 8:55 A.M. Sunday morning, December 12th, and taken to the Western Police Station in Baltimore but was not taken before the magistrate until 4 o'clock P. M. on December 13th. The statute applicable to Baltimore City provided that the officer making the arrest should take the accused immediately before the nearest police justice for examination and Grear contended that the confession was obtained from him while he was so unlawfully held and inadmissible. It was said in that case, 194 Md. at pages 348-349, 71 A. 2d, at page 30: "Lack of sufficient evidence to hold him could not be a valid or pertinent reason. Lack of evidence to hold him lawfully manifestly could not justify holding him unlawfully. We do not, however, mean to suggest that the police did not have sufficient evidence to hold Grear, or that in any case a duty to take a person arrested immediately before a magistrate for examination implies a right to be immediately discharged unless the state then and there produces testimony which would

be sufficient to hold the prisoner after a full preliminary hearing or a full hearing on *habeas corpus."* We further held that unless the facts showed that the illegal arrest in itself constituted such duress as to make the confession involuntary the same rule as to admissibility of the confession is applicable as where the arrest is legal. See also *James v. State,* 193 Md. 31, 65 A. 2d 888. It was said in *Audler v. Kriss,* 197 Md. 362, 368, 79 A. 2d 391, 395: "The failure to have counsel present, even where the accused is not permitted to consult counsel, is not sufficient to deny admission of a confession, if the confession was given voluntarily. *Day v. State,* 196 Md. 384, 397, 76 A. 2d 729, 735." *White v. State,* 201 Md. 489, 94 A. 2d 447. We deem the trial judge was clearly correct in admitting this confession in evidence.

During the examination of the appellant as aforesaid, he was asked by his counsel whether he had been given a preliminary hearing the next morning after his arrest. The court sustained an objection to this question and appellant assigns this as error. We have previously held herein, on the question of admissibility, that the delay in the preliminary hearing did not make the confession involuntary. However, as the question whether the confession was voluntary is ultimately for the jury and as a new trial is to be awarded for other reasons, the appellant should be allowed to answer this question.

The appellant further contends that the trial court erred in permitting the State to ask him on cross examination whether he had been convicted of an assault on an officer. It has been held in this State that while evidence of defendant's prior convictions of crimes, other than that charged, need not be restricted to infamous crimes or crimes involving moral turpitude to be admissible, such convictions should be for law violations which may have some tendency to impeach defendant's credibility as a witness. No rigid classification of crimes seems possible. The court must exercise discretion and its decision will not be interfered with on appeal, except when the evidence is so clearly irrelevant that its ad-

mission could not be said to be within the discretion of the trial court. *Nelson v. Seiler*, 154 Md. 63, 139 A. 564; *Hunter v. State*, 193 Md. 596, 605, 69 A. 2d 505. We find no error. The appellant answered the question by saying that he posted collateral and never "went to trial about it". Such an answer was equivalent to an answer of "no" to the question.

The appellant further contends that the trial court erred in refusing to allow him to argue to the jury the question as to whether the confession was voluntary. The following stipulation was filed by the State's Attorney and the attorney for the defendant:

"It is stipulated by and between the State of Maryland and the defense that during the trial of Daniel Linkins, Jr., in the above entitled cause, that in the course of the argument, the defendant's counsel started to argue the admissibility of the confession as to whether it was voluntary, at which point the State's Attorney objected on the grounds that the admissibility of the confession was solely a question for the Court to determine. Defendant's counsel contended and argued to the Court that the ultimate question as to whether or not the confession was voluntary was for the jury to decide. The Court sustained the State's Attorney's objection, commenting that the confession was in and he would not permit the defendant's counsel to argue whether or not the confession was voluntary."

Of course, the question as to whether a confession is admissible in evidence is for the court alone. *Nicholson v. State*, 38 Md. 140, 155, 156; *Biscoe v. State*, 67 Md. 6, 10, 8 A. 571; *McCleary v. State*, 122 Md. 394, 399, 400, 89 A. 1100; *Carey v. State*, 155 Md. 474, 479, 480, 142 A. 497; *Markley v. State*, 173 Md. 309, 317, 196 A. 95; *Jones v. State*, 188 Md. 263, 270, 52 A. 2d 484. Admissibility does not signify that the evidence admitted has demonstrated or proved the fact to be proved,

but merely that it is received by the tribunal for the purpose of being weighed with other evidence. Admissibility falls short of proof. The rule of law uttered by the judge, merely declares what is sufficient to go to the jury. The jury ultimately decides upon the total effect which we call proof. *Wigmore* on *Evidence,* Third Edition, Section 12, pages 296, 299; *Hitzelberger v. State,* 174 Md. 152, 161, 197 A. 605. This Court has held in three recent cases that, although the question as to whether the confession is admissible in evidence is for the trial court, the ultimate fact as to whether it was freely and voluntarily made is for the jury. Chief Judge Marbury said in *Peters and Demby v. State,* 187 Md. 7, at page 15, 48 A. 2d 586, 590, decided July 23, 1946: "The first question is the admissibility of the confession, but the jury, or, as in this case, the Court siting as a jury, is not barred by its admission from passing on the circumstances under which it was obtained or its credibility. They may disregard it entirely in reaching their verdict." He then quoted from *McCleary v. State,* 122 Md. 394, at page 410, 89 A. 1100, *supra.* Judge Grason said in the recent case of *Smith v. State,* 189 Md. 596, at page 603, 56 A. 2d 818, 821, decided January 16, 1948: "The law regarding the admissibility of a confession has been stated by this court many times. We will restate the rule. Before a confession can be admitted in evidence, the State must show, to the satisfaction of the court, that it was the free and voluntary act of an accused; that no force or coercion was exercised by the officers obtaining the confession, to cause the accused to confess; that no hope or promise was held out to an accused for the purpose of inducing him to confess. If, after a consideration of both the evidence of the State and the evidence offered by an accused (if any be offered by him) regarding the matter, the court is of the opinion that the evidence shows, *prima facie,* that the confession was freely and voluntarily made, it should be admitted in evidence; and, if not, it should be rejected. The matter, in the first

instance, is for the court, and involves a mixed question of law and fact. When admitted in evidence it is *prima facie* proof that the confession was freely and voluntarily made, but the ultimate fact is for the jury, and must be considered by it in the light of all the facts and circumstances of the case. If the jury, notwithstanding the confession is admitted, finds that from all the testimony in the case it has not been proved beyond a reasonable doubt that it was the free and voluntary expression of the accused, it should disregard the confession in the consideration of the guilt or innocence of the accused. If they do find that the proof shows beyond a reasonable doubt that the accused freely and voluntarily made the same, and that no coercion or force was exercised by the officers to obtain the same, nor any hope or promise was held out by them to the accused to induce him to make the confession, they should consider it, together with all the other facts and circumstance in evidence, in arriving at the verdict. See *Demby v. State,* 187 Md. 7, 48 A. 2d 586; *Jones v. State,* 188 Md. 263, 52 A. 2d 484." In *Day v. State,* 196 Md. 384, 399, 76 A. 2d 729, 736, decided November 15, 1950, Chief Judge Marbury reiterated the same rule, where it was said: "The practice in this State, approved in many cases, is that the court first hears evidence without the jury to determine whether a confession is voluntary and should be admitted. If it decides to admit it, the same evidence is then given to the jury, as it has the final determination, irrespective of the court's preliminary decision, whether or not the confession is voluntary, and whether it should be believed. In so doing, the jury is entitled to have before it all of the evidence which affects the voluntary character of the document, and which the court passed upon in admitting it." See also *Annotation,* 170 A. L. R. 576, 577, written in 1947, citing the Maryland cases prior to *Smith v. State, supra,* and *Day v. State, supra.* Of course, the jury having the final determination, irrespective of the court's preliminary decision whether it is admissible in evidence, wheth-

er or not the confession is voluntary, and whether it should be believed, the attorney for the accused should certainly have the right to argue before the jury whether the confession was made voluntarily and whether it should be believed. We must therefore find that the learned trial judge erred in not allowing appellant's attorney to argue this question and therefore that a new trial should be awarded.

As contended by the State, if we find the failure to allow the attorney to make this argument was not prejudicial to the appellant because the facts contained in the confession were later admitted by the appellant in his own testimony while on the stand, the error in denying the argument was harmless. If inadmissible evidence is admitted over objection and the same evidence is later admitted without objection, or produced by the party who objected, the error is harmless. *Damm v. State*, 128 Md. 665, 669, 97 A. 645; *Smith v. State*, 182 Md. 176, 184, 32 A. 2d 863; *Purviance v. State*, 185 Md. 189, 200, 44 A. 2d 474; *Colie v. State*, 193 Md. 608, 611, 69 A. 2d 497. In the verbal confession admitted in evidence the appellant admitted that he was with the other boys and was a partner. He said he had previously lied and he would tell the truth that he was along with them and was a partner. According to Trooper Myers, appellant said "they had been up previous to that to Gayle's Restaurant and talked and discussed about going to California or west and he said Barnes owed $123.00 on his car and had to pay it off before they left so then Danny said they were riding around and out by the Fox Deceived Farm at which time they saw a car and somebody said let's stop and they pulled up the road possibly 150 yards from the car, the parked car of Mr. Baker's, got out, walked back and Danny's statement was he had nothing to do with the stealing of the pocket book he stayed in the rear of the car, placing him back where Mr. Baker was beaten right bad." The written confession was taken in question and answer form. It contained the statement that

the State's Attorney advised appellant he could "answer my questions of your own free will and volition, or you can refuse to answer them, and that anything you say can be used for or against you. We are making you no promises, no threats of any kind". By questions and answers appellant in this written confession admitted that he, Foltz, Barnes, Uhler, McCarney, and the two Ahalts left Gayle's Restaurant about 11 P.M. in Barnes' car. They turned left at the Fox Deceived Farm and saw the parked car. They drove about 150 yards beyond and walked back to the parked car. He and Barnes stood behind the car and Foltz went up and told the man to get out of the car. The man told him to wait until he got his gun out of the glove compartment. Foltz then opened the car door. Another boy "dived across and grabbed him and flung him out in the road". The girl screamed "while Foltz was hitting him and they were all scrambled there in the middle of the road". He and Barnes were still behind the car. He did not look in the car although he saw the girl there. He does not know who took the pocket book, but Uhler had it when he got back in the car. Uhler took the papers out of the pocket book and threw them away and Foltz kept the pocket book. He denied that they made any plans at Gayle's Restaurant other than to ride "out by the road to see how many cars were parked." When asked: "Last night Barnes told Lieutenant Chapman over in the State Police Office in the presence of Foltz and Uhler that he didn't like this idea and Uhler told us things to this effect, so there was a plan to do something when you left Gayle's Restaurant," appellant answered: "In a way, yes."

When appellant took the stand in his own defense, he testified that the only plans made in Gayle's Restaurant were to go to the fire company carnival. After they left the carnival they discussed "about riding around and have some fun. * * * Just sneak up on cars, watch what they were doing." He said there was no discussion about taking money from anybody. They

looked in other cars that evening but did not rob any of the people therein. His statement as to what happened at the Baker car was the same as given in his confessions. He said he had not planned to rob because he was working and had money. He denied that there was any discussion about him and Barnes going to California and needing $123.00 to pay for Barnes' car. He said he and Barnes had discussed going to Kentucky on a vacation. He repeated that their whole idea when they left Gayle's Restaurant was only to have fun. He said he did not tell the officers that he "did not like the idea." He got none of the money taken from Baker.

We cannot say that in his testimony in his own defense appellant admitted the same facts contained in his verbal and written confessions, and that appellant was not prejudiced by the refusal to allow his attorney to argue to the jury whether the confessions were voluntary and should be believed. In his testimony he denied that they had any plans except to look in cars. He also denied any statement about going to California and about the necessity of paying off the $123.00 owing on the Barnes car. We are of opinion that the judgment should be reversed and a new trial awarded.

*Judgment reversed, with a new trial.*