## TAYLOR *v.* STATE

[No. 21, September Term, 1961.]

562

*Decided November 7, 1961.*

The cause was argued before BRUNE, C. J., and HAMMOND, PRESCOTT, MARBURY and SYBERT, JJ.

*Harry J. Goodrick,* with whom was *Leonard H. Lockhart* on the brief, for appellant.

*Clayton A. Dietrich, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, J. Albert*

*Roney, Jr.,* and *G. Reynolds Ash, State's Attorney* and *Assistant State's Attorney,* respectively, for Cecil County on the brief, for appellee.

BRUNE, C. J., delivered the opinion of the Court.

This appeal from a conviction of murder in the first degree, upon which a sentence of life imprisonment was imposed, presents questions as to: (a) the refusal of a continuance; (b) cross-examination of the defendant with regard to his previous conviction on a charge of assault with a deadly weapon; and (c) the sufficiency of the evidence.

The essential facts are stated below. One Andy Taylor, brother of the appellant, Cletus E. Taylor, rented an apartment in Elkton from one James De Cava, the victim of the shooting here involved. The afternoon before the shooting the appellant visited his brother's apartment, the brother left and a man named Danner arrived. Danner and the appellant did some drinking that evening and the next morning. The appellant says he had had about four beers on the day of the shooting. On the day of the shooting Danner was very drunk. The appellant was described as looking as if he had been drinking, but talking sensibly. About 1 P.M. two other men, Cooper and Blankenship, came to Andy Taylor's apartment where they found Danner and the appellant. About an hour later De Cava, the landlord, came to collect the rent. He was told that Andy was then in jail for driving an automobile without a license. A discussion or argument about a lock ensued between De Cava and the appellant, at the end of which the appellant told De Cava he had been there long enough, took him by the arm and put him out of the apartment. De Cava broke free in the hall. The appellant then turned back into the apartment, picked up a .22 rifle and followed De Cava into the hallway. A shot was fired which struck De Cava in the head. He went across the street to a tavern seeking assistance, was taken to the hospital and died early the next day as a result of the wound.

When the appellant picked up the gun, Cooper and Blankenship, both of whom were scared, left hastily, with Cooper in

the lead, for another apartment on the same floor, to which they were admitted just after the shot was fired. The appellant claims that the discharge of the rifle was accidental and that it was due to jostling or grabbing of the gun by one of his companions. On the stand he was not sure which one. The testimony of Cooper and Blankenship is to the effect that they left ahead of the appellant when the latter got the gun, and indicates that neither of them jostled him. Danner could not be located and did not testify.

Immediately after the shooting the appellant put the rifle back in the apartment and then walked several blocks to his sister's house. He was found there by the Sheriff approximately an hour and a half after the shooting hiding in bed with the covers pulled up over him. The appellant was fully dressed, except for his shoes and, the Sheriff testified, he was then sober. The Sheriff arrested him on a charge of assault. The appellant was interrogated the next morning by the Sheriff and two of his deputies. The appellant was informed of the death of De Cava which had occurred some hours earlier. He then gave a voluntary statement which was taken down in question and answer form. He declined to sign the statement saying that he could not read. In the statement the appellant admitted having gotten the gun and having raised it under his arm and having pulled the trigger. He stated that he was just going to scare or bluff De Cava, but admitted that you don't pull the trigger when you're just going to bluff someone. He also said that Cooper grabbed the gun and shoved it to the side of the house.

On the stand the appellant said that he could not remember whether he had his hand on the trigger or not when the gun went off and he speculated that it might have been Danner, and not Cooper, who grabbed the gun, though in his statement to the Sheriff he had eliminated Danner because Danner was drunk. He claimed that the discharge of the gun was due to a bump.

On cross-examination he was asked if he had ever been convicted of a crime. The question was objected to, but defense counsel then told the appellant to answer "yes" or "no." He answered "yes." Over objection he was then required to

state the nature of the offense, and he answered "assault with a deadly weapon."

The appellant moved on the day of the trial for a continuance because of the absence of the witness Danner. Danner appears to have been an alcoholic with no fixed place of abode where he could be found. Between the shooting and the trial he had been in a Veterans' Hospital for alcoholism, but had left, was a month overdue in returning to the hospital at the time of trial, and his whereabouts were unknown. The State refused to admit by stipulation an affidavit executed at some time by Danner. Since the affidavit is not in the record and no proffer of it was made, its contents are not before us. The matter was discussed in chambers between the trial judge and counsel for both sides, in the presence of the appellant, and the court refused to grant a continuance.

The granting or refusal of a continuance is usually within the discretion of the trial court. The law, of course, contemplates that parties shall have every proper opportunity to present their cases to the court and jury, but here we find no abuse of discretion in the court's declining to continue the case in order to procure the attendance of this witness. There was nothing, so far as we can see, to indicate that his presence could be obtained within a reasonable time and it is difficult to believe that anyone as thoroughly drunk as he is stated by other witnesses to have been at the time of the shooting, could have given any material testimony as to what then occurred. Hence, we do not find any showing of prejudice. See *Jackson v. State,* 214 Md. 454, 459, 135 A. 2d 638, and cases therein cited, cert. den., 356 U. S. 940; *Stansbury v. State,* 218 Md. 255, 262, 146 A. 2d 17; *Goldstein v. State,* 220 Md. 39, 46, 150 A. 2d 900; *Eastover Co., Inc. v. All Metal Fabricators, Inc.,* 221 Md. 428, 437, 158 A. 2d 89.

The appellant conceded that he could be required on cross-examination to answer the question whether he had ever been convicted of any crime, but claims that it was error to require him to answer as to the nature of the crime—assault with a deadly weapon.

A comparatively recent case discussing the impeachment of a witness by cross-examination with regard to a previous

offense is *Linkins v. State,* 202 Md. 212, 96 A. 2d 246. Linkins appealed from convictions for assault with intent to rob, larceny and assault. He contended that the trial court erred in permitting him to be asked on cross-examination whether he had been convicted of an assault upon an officer.[1] This court found no error; but since it held that Linkins' answer that he had posted collateral on such a charge but had not gone to trial on it was equivalent to an answer of "no," the court did not have to answer quite the same question which we have here. Judge Collins, speaking for this court, did, however, state the rule on the subject prevailing in Maryland as follows (202 Md. at 220-21): "It has been held in this State that while evidence of defendant's prior convictions of crimes, other than that charged, need not be restricted to infamous crimes or crimes involving moral turpitude to be admissible, such convictions should be for law violations which may have some tendency to impeach defendant's credibility as a witness. No rigid classification of crimes seems possible. The court must exercise discretion and its decision will not be interfered with on appeal, except when the evidence is so clearly irrelevant that its admission could not be said to be within the discretion of the trial court. *Nelson v. Seiler,* 154 Md. 63, 139 A. 564; *Hunter v. State,* 193 Md. 596, 605, 69 A. 2d 505."

That the matter is one primarily for determination by the trial court in the exercise of its discretion is also supported by such other cases as *Burgess v. State,* 161 Md. 162, 155 A. 153, and *Baltimore & Ohio R. Co. v. Strube,* 111 Md. 119, 73 A. 697 (evidence of convictions for assaults by defendant's agent and witness held admissible in civil suit for assault based upon use of excessive force in making an arrest). In the *Burgess* case, the ruling of the trial court in excluding evidence of the conviction of a prosecuting witness for an assault committed five years previously and having no relation to the case on trial, was upheld. In the same case, however, as to one of the defendants, this court said (161 Md. at 169):

---

1. Not a crime separate and distinct from ordinary assault. *Roberts v. Warden,* 206 Md. 246, 249, 111 A. 2d 597.

"It is established in this state that in criminal cases, where the defendant is a witness in his own behalf, he thereby puts his character in issue, and may be asked on cross-examination if he has been convicted of crime." *Niemoth v. State,* 160 Md. 544, 566, 154 A. 66, 71, is cited in support of this proposition and Judge Urner's distinction made in the *Niemoth* case between cases involving an accusation, as distinguished from a conviction, of crime "as a means of impeaching the credibility of a witness" is quoted.

The appellant's brief states that the previous offense was an assault for which he had been convicted in March, 1958, which was a little less than two years before the trial. Though there are authorities elsewhere that a conviction for assault does not bear upon credibility, that rule seems inconsistent with our *Linkins* and *Strube* cases. Under those cases and others above cited, including *Burgess,* we think that the admissibility on cross-examination of the appellant's prior conviction for assault for the purpose of impeaching his credibility was to be determined by the trial court in the exercise of its discretion; and we think that on this phase of the case, too, no abuse of discretion has been shown. The evidence admitted was not clearly irrelevant.

The appellant's last contentions—that the court should have granted directed verdicts of not guilty as to both first and second degree murder—are not sustainable. The jury was not bound to believe the defendant's self-exculpatory claims. *Houston v. State,* 225 Md. 403, 171 A. 2d 233; *Hines v. State,* 223 Md. 251, 164 A. 2d 268.

In overruling the appellant's motion, the learned trial judge made some very pertinent observations with regard to the evidence, excerpts from which we quote:

> "[Y]ou have evidence of the taking of a weapon, walking across the room to get it, and coming back, going out into the hall, raising it under his arm and discharging it. Then he says that he was trying only to bluff him and there is the old refrain 'I did not know that the gun was loaded.'
>
> Now there you have all the elements, at least if the jurors believe them, as against the contention on

the one hand that this fellow Cooper had brushed against him in some manner and pushed the rifle against the wall causing it to go off and to discharge.

On the other hand, you have testimony that in order to use this rifle, it has to be cocked to put a bullet in the chamber."

\* \* \*

"[B]ut at the time that it would have happened in the hall, they [Cooper and Blankenship] were making for the apartment in obvious fear and they must have suspected that something was going to happen. Whether there was some talk indicating his intention or not, there is no evidence of that, but I think the jury could imply from the actions of those two men that they suspected and had good reason to suspect that something was going to happen—something serious was going to happen.

To go out into the hall, to pick up a rifle, carrying it that distance, and then raising it and pulling that trigger, the jury could very readily find the deliberate premeditation necessary to amount to first degree murder."

There was clearly a homicide committed by the defendant, and we think the evidence was enough to warrant findings that there was sufficient time for deliberation and premeditation (*Elliott v. State,* 215 Md. 152, 137 A. 2d 130; *Brown v. State,* 220 Md. 29, 150 A. 2d 895) and that there were in fact deliberation and premeditation. *Chisley v. State,* 202 Md. 87, 95 A. 2d 577; *Kier v. State,* 216 Md. 513, 140 A. 2d 896; *Houston v. State, supra.*

*Judgment affirmed.*