# WILLIAM GEISSELMAN

## *vs.*

# LAURA GEISSELMAN.

*Divorce: adultery; mistake of law no excuse.  Recrimination: duty of Court, even where defense not formally set up, if petitioner guilty.*

A mistake of law can not excuse one charged with adultery.
p. 463

It is not only the right but the duty of the court to refuse a divorce, although the defense of recrimination is not formally set up, if it appears that the plaintiff is guilty.          p. 463

The marriage and cohabitation of a husband with another woman before his former marriage was legally dissolved is adulterous, even though such marriage was contracted in the honest belief that the conviction and incarceration of his former wife permitted him to marry without a divorce.          pp. 461-462

*Decided April 24th, 1919.*

Appeal from Circuit Court for Baltimore County.  (Mc-Lane, J.)

The facts are stated in the opinion of the Court.

The cause was argued before Boyd, C. J., Briscoe, Burke, Thomas, Pattison, Urner, Stockbridge and Constable, JJ.

*Herbert C. Forrester,* for appellant.

No appearance for appellee.

Boyd, C. J., delivered the opinion of the Court.

This is an appeal from a decree dismissing a bill of complaint filed by the appellant against the appellee for a divorce *a vinculo matrimonii,* on the ground of her alleged adultery. They were married on the 22nd of June, 1913, in New Jersey. The testimony of the plaintiff and of another witness, as well as a letter of the defendant, shows that she was guilty of adultery. The bill alleges that from December, 1913, until July, 1915, the defendant left the plaintiff on several occasions and lived with other men, as man and wife; that he forgave her and took her back, but there is no evidence of condonation of the offense committed in July, 1915, and subsequent thereto.

She and another girl and a man were convicted in Camden, New Jersey, of what the plaintiff spoke of in his testimony as high-way robbery, although the record of the conviction was not offered. The plaintiff testified that it was in August, 1915, and that he saw her in jail in December, 1915, but had not seen her since. She was sentenced to confinement in a reformatory institution. She was paroled in January, 1917, and there is evidence tending to show that after she was released, she was seen going upstairs in a boarding house with some man.

On May 6, 1916, the appellant married another woman in Baltimore County, Md., where he went the latter part of August, 1915, and by that woman he had one child, but no child by his first wife. As early as February 2nd, 1916, as shown by the letter of the appellee, which the appellant offered in evidence, he was paying attention to the woman he afterwards married. He said that he had been going with her about two weeks "towards the latter part of December," but that he had had no immoral relations with her; that they worked in the same place. Their child was born in January, 1917. The plaintiff alleged in his bill and testified that he believed that after his wife was sentenced and imprisoned, he could marry again without obtaining a divorce, and, being under that impression, married in Baltimore County.

The appellant was indicted for bigamy in December, 1916, and entered into a recognizance. Nothing seems to have been done with the case until February, 1918, when he plead guilty but was paroled. That was after the testimony was taken in this case, but before the decree was passed. In the appellant's brief it is stated that when he was arrested and the situation became known to him, he ceased to live with the woman spoken of as his second wife, but there is nothing in the bill or in the evidence to that effect. The bill for divorce was filed in October, 1917, and it is stated in it that it is his desire to be divorced, "so that he may again marry the woman whom he married in good faith, and thus make her his legal wife and make her child legitimate."

Our statute is silent as to the defense of recrimination, but it was a bar in the Ecclesiastical courts and has been recognized in many cases in this State, amongst others: *Fisher* v. *Fisher,* 93 Md. 298, and *Green* v. *Green,* 125 Md. 141. The question now involved has not been heretofore decided by us, but there have been many decisions elsewhere on this and kindred subjects. Cases in which the defendants were charged with bigamy are more analogous to those where parties are charged with adultery, by reason of invalid marriages, than any others, and we will first refer to some of them. The question has generally arisen in them either when, in the statute against bigamy, it was provided that it should not apply where the other spouse had been absent for a period of years named in the statute—generally seven—and the accused did not know that the other spouse was still living, or where there had been a divorce proceeding which was found to be invalid.

The English statute had a proviso that "nothing in this act shall extend to any person marrying a second time whose husband or wife shall have been continually absent from such person for the space of seven years last passed, and shall not have been known by such person to be living within that time." Most of those in this country are in substance similar to that. The leading English case on the subject seems to be *Reg.* v. *Tolson,* 23 Q. B. Div. 168, although it was decided

by a divided Court of nine to five. It, however, settled the rule there, affirming some earlier cases and overruling some others. It was there held: "That a *bona fide* belief, on reasonable grounds, in the death of the spouse at the time of the second marriage, is a good defense to a prosecution for bigamy." The English rule has not been followed in many jurisdictions in this country. Without deeming it necessary to discuss the numerous cases, we will refer to *State* v. *Ackerly,* 79 Vt. 69, 64 At. 450, reported in 8 Ann. Cas. 1103, and annotated on pages 1104, etc.; *Cornett* v. *Commonwealth,* 134 Ky. 613, 121 S. W. 424, and reported in 21 Ann. Cas. 399; *Rex* v. *Brinkley,* 14 Ont. L. Rep. 434, reported in 10 Ann. Cas. 407, and annotated on pages 415, etc., and *People* v. *Spoor,* 235 Ill. 230, reported in 14 Ann. Cas. 638. In *State* v. *Ackerly,* quoting for convenience from the syllabus in the Annotated Cases, it was held that: "It is bigamy for a married person whose spouse is absent from the State or from the country, but is alive, to marry a third person before the expiration of the time prescribed by the statute, even though the spouse contracting such second marriage does so under the honest belief, based upon reasonable grounds, that the absent spouse is dead." Many cases are cited in the note to show that such is the doctrine in this country. In *Cornett* v. *Com.,* it was held as stated in note in Annotated Cases, "that an honest belief that the first spouse is dead is no defense to a prosecution for bigamy although the evidence clearly shows that the defendant had no knowledge or intention of committing any wrong by his second marriage." The Kentucky Court of Appeals also held in that case that evidence of good faith was admissible provided the jury was admonished not to consider it as a defense to the prosecution, but only in mitigation of the punishment, if they found him guilty. In *People* v. *Spoor, supra,* JUSTICE CARTER, in speaking for the Court, said: "We think that the decided weight of authority in this country holds that proof of the fact that the second marriage was entered into in good faith, under an honest but mistaken belief that the first wife was

dead or had obtained a divorce, constitutes no defense to the charge of bigamy." The Court said, in answer to the contention that the evidence offered tended to show lack of criminal intent, that "the intent may be inferred from the criminality of the Act itself." There was a good deal in that case to show good faith. In *Rex* v. *Brinkley, supra,* a divorce was obtained in Michigan, which was invalid in Canada and thereafter, the husband, acting under legal advice that the divorce was 'valid and that he was at liberty to marry again, went through a form of marriage with another woman in Michigan, where they had gone from Canada for the purpose of contracting marriage, and he was held guilty of bigamy under the Canadian law. In the note to that case, it is said that: "The rule laid down in the reported case, that an honest belief in the validity of an invalid divorce, is no defense to a prosecution for bigamy, is the law in most jurisdictions," and "*a fortiori,* it is no defense that the defendant erroneously believed prior to the second marriage that a divorce had been granted." Cases from different jurisdictions are cited in the notes to those cases.

In 7 C. J. 1163, after stating the English rule, which it is said obtains in Canada, the Philippines and in a few jurisdictions in the United States, and adding "but such belief must be the result of proper inquiries and efforts to ascertain the truth," the author states that the prevailing doctrine in this country is directly opposed to the English rule and quotes from *Parnell* v. *State,* 126 Ga. 103; 54 S. E. 804, that: "The absent spouse must be in point of fact dead, if (defendant) marries before the prescribed period has expired, to protect him from the pains and punishments of a second marriage." On page 1165, section 22 of 7 C. J., it is said that: "In a number of jurisdictions it is held that an honest belief, reasonably entertained, that a valid divorce has been granted, will constitute a defense to a prosecution for bigamy. The weight of authority, however, is to the contrary." In section 23 on that page it is said: "Advice of counsel that there is no impediment to a second marriage is no defense to a prose-

cution for bigamy. This principle has been applied when defendant was advised by counsel that a decree of divorce had dissolved the prior marriage, or that the prior marriage was void." Many authorities are cited in the notes on those pages. In 3 *Rul. C. L.* 801-803, Par. 9-12, the question of intent is considered. It is said in paragraph 9 that in the United States, "the crime of bigamy is considered to be on a par with various police regulations where criminal intent is unnecessary. Another strong argument for the American view is that of public policy, as it may fairly be said that various unfortunate complications might well arise from the protection of two separate marriages by the same person." Then, after referring to statutes about the absence of the spouse, it is said: "These statutes are usually construed to mean that one who marries within the statutory period has no defense if the first wife is still alive, although the second marriage is entered into in an honest belief in the death of the first wife. It is usually the intent of the statute that one who marries within the statutory period shall do so at his peril. The consequences of an invalid marriage to society and to innocent parties are so serious that the law may well take measures calculated to insure the procurement of the most positive evidence of death before the contracting of another marriage in less than the time fixed."

There would seem to be no doubt that under the above authorities, and others might be cited, the appellant could not have escaped conviction for bigamy and he, as we have seen, did actually plead guilty of that crime. If the Court was satisfied that he was acting in good faith, as it apparently was, paroling him was a very wise and just disposition of the case. When we come to the question whether he was guilty of adultery, what must be our conclusion? After giving consideration to the case of *State* v. *Ackerly,* which was reported in 79 Vt., we confess we were at first surprised to find the case of *State* v. *Audette,* 81 Vt. 400, 70 Atl. 833. Notwithstanding what was said and done in *State* v. *Ackerly,* the Supreme Court of Vermont held that Audette was improp-

erly convicted of adultery and reversed a judgment of conviction. The distinction was largely based on the intent of the Legislature in the two statutes. It was held in the *Audette case,* quoting from syllabus in Atlantic Reporter, that: "A man free to marry, who marries a woman representing herself to be single, and who cohabits with her under a mistake of fact, honestly entertained on reasonable grounds and without negligence, is not guilty of adultery on proof of her existing marriage to another." In that case the Court evidently concluded that there was no reason for the accused to question what the woman had told him, that she was single, and there was nothing in the case as reported to show that he knew, or had any reason to suspect, that she had been previously married. He married her after an acquaintance of five months and he believed her to be single at that time. The Court said: "There is a plain distinction between this case and the case of one who has an illicit connection with a woman whom he mistakenly supposes to be unmarried, or above the age of consent, or not of the prohibted relationship, and is thereupon charged with adultery, statutory rape or incest, as the case may be. In such a case there is a measure of wrong in the act as the defendant understands it, and his ignorance of the fact that makes it a greater wrong will not relieve him from the legal penalty. Here the connection was had after the performance of a marriage ceremony, in the full belief that the marriage was legal, and in the absence of any circumstances calculated to suggest the contrary."

In a case of bigamy the accused knows that he had had a former wife, and therefore he should not be excused on the ground that he had no reason to make proper inquiries as to whether she was still living, if the time fixed by the statute had not expired, or whether a divorce obtained by or aaginst her was valid. He would have no right to marry again unless his prior marriage was at an end by death, divorce, or in some valid way. But Audette had the right to marry and, unless he had some reason to know or suspect that the woman he proposed to marry already had a husband, he would not

ordinarily be expected to make inquiries of others as to whether she was deceiving him, or whether she was already married when she told him, as the reported case shows she did, that she was single, and said when the license was obtained, that it was her first marriage. There is, therefore, no conflict between those cases, and the latter one presents some views which are at least worthy of the most serious consideration.

In 1 R. C. L. 635, par. 7, it is stated: "It is very generally said that the existence of a criminal intent is an element of the crime of adultery that is, that the defendant, knowing the existence of the facts which would constitute the sexual act a crime, nevertheless indulged in the act. The fact of such intent need not be proved by direct evidence. As in many other instances, when intent is an element of the crime charged, it may be inferred from the act done. * * *

"So, if one of the parties was mistaken as to a matter of fact, after exercising due care to ascertain the truth in relation thereto, which fact, had it been true, would have rendered the alleged criminal act legal and innocent, the party so acting under such mistake of fact, is innocent of crime." Citing, *State* v. *Cutshall,* 109 N. C. 764, 14 S. E. 107; *Alonzo* v. *State,* 15 Tex. Ct. Ap. 378, 49 Am. Rep. 207. In 1 R. C. L. 644, par. 22, it is said: "An honest belief entertained by the defendant that he had been divorced, is, however, no defense to a prosecution for adultery." In Par. 23 on that page, the same distinction is made which we referred to above, in connection with *State* v. *Audette.* In 1 *Am. & Eng. Enc. L.* (2nd Ed.) 750, it is said, that: "As in the case of other crimes, the offense of adultery can not be committed without a criminal intent. * * * But the intent may be inferred from the criminality itself." On page 751 it is said: "When a marriage is void by reason of the fact that one of the parties thereto had a consort living, and the other is ignorant of that fact, the party who is without knowledge of the bigamuos nature of the marriage does not, by sexual intercourse with the supposed husband or wife, after the mar-

riage, and before such knowledge is obtained, become guilty of adultery." See also 2 C. J. 16.

In 14 *Cyc.* 648, it is said: "To constitute a defense of recrimination, the misconduct of which the complainant is guilty must be such as in itself to afford the defendant ground for divorce, and it must also have been committed by plaintiff knowingly and without connivance, justification or excuse." There is cited in the note, *Snook* v. *Snook,* 67 L. T. Rep. (N. S.) 389, but in that case the Court exercised the discretion conferred upon it by the "Matrimonial Causes Act" of 1857. Under the head of "Mistake of Fact" in that same note, the following cases are cited: *Whippen* v. *Whippen,* 147 Mass. 294, 17 N. E. 644; *Hall* v. *Hall,* 4 Allen, 39; *Smith* v. *Smith,* 64 Iowa, 682, 21 N. W. 137; *Whitworth* v. *Whitworth,* 1893 L. R. Pro. Div. 85; *Freegard* v. *Freegard,* 1883, 8 L. R. Pro. Div. 186, and some other English cases. They are cited by the author in support of the proposition that "a wife who contracts a second marriage, if she entertains a *bona fide* belief that her first husband is dead, is not thereby barred from obtaining a divorce from the first husband because of his adultery," but to that is added, "provided that she ceased cohabitation with the second husband as soon as it came to her knowledge that the former husband was living. (*Matthewson* v. *Matthewson,* 18 R. I. 456, 28 At. 801; 49 Am. St. Rep. 782.)" To the above list of English cases, the appellant added *Moore* v. *Moore,* 67 L. T. Rep. 530, 1892 L. R. Prob. Div. 382. We can not accept the English cases as conclusive by reason of the rule they have adopted on questions of this character. In *Green* v. *Green,* 125 Md. 141, JUDGE STOCKBRIDGE refers to *Snook* v. *Snook, supra,* but in the next paragraph pointed out that in *Moore* v. *Moore,* 121 Mass. 232, an almost similar condition was presented and that Court held that the decree *nisi* of divorce which had been entered, to become absolute after the expiration of 6 months, could not be made absolute because the complainant, believing the divorce to be absolute, married another woman and had intercourse with her. The Supreme Court of Massa-

chusetts held that it was an act of adultery which disentitled him to relief. JUDGE STOCKBRIDGE also referred to *Whippen* v. *Whippen,* 147 Mass. 294, cited in above mentioned note from *Cyc.,* where it was held that the complainant was guilty of adultery by reason of a second marriage which was fully consummated. The particular point in this case was not involved in *Green* v. *Green,* but the citations in the opinion are sufficient to show that this Court would not be prepared to go to the extent that some of the English cases have gone.

We are not prepared to hold, however, that in no case should relief be granted, because it is shown that the plaintiff had sexual intercourse with a woman other than his real wife, if it was the result of a *bona fide* mistake of fact which led the husband to marry the other woman and cohabit with her, in the full belief that she was his lawful wife—provided the circumstances were such that he was justified in his belief that the first marriage had ended and that he had not been negligent or lax in endeavoring to ascertain the actual facts before he entered into the second marriage. One guilty of recrimination is denied a divorce because it is only allowed an innocent party, and no one has the right to base his or her claim for relief on a ground authorized by the statute when he or she has been guilty of the same thing, or of something which furnishes the spouse ground for divorce. But if it be clearly the result of an honest mistake of fact, the Court ought to have some discretion to grant relief in cases where there is no question about the good faith and due diligence of the party. Under such circumstances, it is not altogether accurate to say that the party is not innocent of recrimination, as understood in divorce courts. The consequences to people who are unquestionably innocent—the spouse and children— are so serious that we are not willing simply to draw a line and say in no case can one cross it who married the second time in the lifetime of his first spouse, without first obtaining a divorce.

But after saying what we have, we do not feel that we would be authorized to grant relief in this case. In the first

place, the mistake made by the appellant was not one of fact, but of law, and the authorities generally hold that a mistake of law can not excuse one charged with adultery.  2 C. J. 216, 1 *Am. & Eng. Enc. of L.* (2nd Ed.) 751.  It is considered in some of the cases cited above.  See for example, opinions in *Rex* v. *Brinkley, supra,* especially that of JUS-TICE MACLAREN.  In this case, whether imprisonment justi-fied remarriage was purely a question of law, and not of fact, if there could be any question about it.

But even in the cases which have adopted the English rule, it is distinctly announced that the mistake must be an honest and reasonable one, and the act of the party must not be the result of his negligence or failure properly to inform him-self.  The appellant was attentive to the second woman he married soon after his wife was imprisoned, and married her a few months afterwards.  If he had inquired of any com-petent clerk in the clerk's office where he got the license, he would doubtless have been informed that his wife's imprison-ment did not authorize him to remarry, but he seems just to have followed his own idea about it, if it be conceded that he had a *bona fide* one, and was married without any justifica-tion whatever.  Under such circumstances, we can not hold that he should be granted a divorce and must affirm the de-cree of the lower Court, although we very much regret the position that conclusion places the second wife and the child in.

As has been decided in this State, *Fisher* v. *Fisher,* 95 Md. 314, it is not only the right but the duty of the Court to refuse to grant a divorce although the defense of recrimina-tion is not formally set up, if it appears that the plaintiff is guilty of it.  See also 9 R. C. L. 392, Par. 185.

*Decree affirmed, the appellant to pay the costs.*