## BRAUN *v.* STATE

[No. 55, September Term, 1962.]

84

*Decided November 21, 1962.*

The cause was argued before BRUNE, C. J., and HAMMOND, PRESCOTT, HORNEY and MARBURY, JJ.

*David L. Bowers* for the appellant.

*Robert C. Murphy, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, James P. Garland, Assistant Attorney General, William J. O'Donnell, State's Attorney for Baltimore City,* and *John Paul Rogers, Assistant State's Attorney,* on the brief, for the appellee.

BRUNE, C. J., delivered the opinion of the Court.

The appellant was tried in the Criminal Court of Baltimore

before the court, sitting without a jury, on a charge of bigamy, was found guilty, and was sentenced to five years' imprisonment.

In his brief, his first point was based upon the facts that his first wife testified that she and the defendant were married in Pittsburgh, Pennsylvania, in 1955, by a religious ceremony, but that the marriage record offered in evidence by the State after the wife had testified showed that the marriage was performed by an Alderman in a civil ceremony. It is conceded that a marriage by either form of ceremony was valid under the laws of Pennsylvania. Even if the error in the wife's testimony had been deliberate (and there is nothing to show that it was), it was hardly material, and in any event it was promptly corrected by the State's offering the record. There is no merit in this contention and it was abandoned at the argument.

The appellant's main contention is that when he entered into the marriage with his second wife in Maryland in 1961, he believed that his first wife had divorced him, that he, therefore, lacked any wrongful intent and hence was not guilty of bigamy. He was prosecuted under § 18 of Art. 27 of the Code (1957) which provides in part:

> "Whosoever being married and not having obtained an annulment or a divorce a vinculo matrimonii * * *, the first husband or wife (as the case may be) being alive, shall marry any person, shall undergo a confinement in the penitentiary for * * * not less than eighteen months nor more than nine years; provided, that nothing herein contained shall extend to any person whose husband or wife shall be continuously remaining beyond the seas seven years together, or shall be absent * * * seven years together, in any part within the United States or elsewhere, the one of them not knowing the other to be living at that time."[1]

---

[1] The portions of this statute above quoted are derived from the Statute of 1 James I, c. 11, which was declared to be in force here by Ch. 8 of the Acts of 1706 of the Provincial Legislature, and which was held in *Barber v. State*, 50 Md. 161, to continue to be

Most American jurisdictions which have considered the question hold that the fact that the defendant may have believed in good faith that there had been a prior divorce or that a prior divorce was valid is no defense to a charge of bigamy if in fact there has been no divorce or it is invalid. See *Wharton's Criminal Law and Procedure* (Anderson Ed., 1957), § 721, p. 529; *Clark & Marshall on Crimes* (6th Ed., 1958, Wingersky Rev.), §§ 5.11, 11.12. Most American jurisdictions also follow a similar rule where the defendant in good faith, but mistakenly, believes his or her first spouse to be dead. *Clark & Marshall, op. cit. supra,* § 5.11. On the general subject see also the cases cited by the above authorities and *Clark & Marshall, op. cit. supra,* § 5.10, dealing generally with the question of criminal intent, and as to belief that the first spouse is dead or divorced, an annotation, and the cases therein referred to, in 57 A.L.R. 792. There are some authorities contrary to the majority view, which largely follow *Reg. v. Tolson,* [1889] 23 Q.B.D. 168. In that case it was held by nine of the judges, with five dissenting, that the defendant's belief in good faith and on reasonable grounds at the time of her second marriage that her first husband, who had deserted her more than seven years earlier, was dead, constituted a defense to a charge of bigamy under the statute of 24 & 25 Victoria, c. 100, s. 57, which is similar to our present statute against bigamy. *Tolson* was, however, limited by *Rex v. Wheat,* [1921] 2 K.B. 119, which involved the same statute. There the court unanimously held that

---

in force in Maryland as modified by Ch. 138, sec. 7, of the Acts of 1809. (Some of the modifications thereby made are not here material.) See 2 *Alexander's British Statutes* (Coe's Ed., 1912) 580-81. (1 James I, c. 11, was repealed and superseded in England by 9 Geo. 4, c. 31, which in turn was superseded by 24 & 25 Victoria, c. 100, s. 57, the language of the later statutes being similar to that of 1 James I, c. 11.) Our statute was amended to its present form by Ch. 142 of the Acts of 1937. In *Barber* bigamy was held to continue to be a felony, though the Act of 1809 did not so state and reduced the penalty. The Act of 1809 substantially retained (as does our present statute) the provisos as to absence contained in Sec. II of 1 James I, c. 11, but it omitted those relating to annulment and divorce contained in Sec. III thereof. These were in effect restored by Ch. 142 of the Acts of 1937.

a mistaken belief that a divorce had been granted afforded no defense, and distinguished *Tolson.* See also *In re Russell* [1901] A.C. 446 (House of Lords).[2]

Mr. Hochheimer in his work on *Criminal Law* (2nd Ed.) § 272, p. 306, states that "An honest, reasonably grounded belief that the former husband or wife is dead, or that a former marriage was dissolved by divorce, has been held to constitute a defense to a charge of bigamy." As to a belief that the first spouse is dead, he cites *Reg. v. Tolson, supra,* in support of his statement and *Comm. v. Mash,* 7 Metc. (Mass.) 472, as *contra.* With regard to divorce, he cites *Squire v. State,* 46 Ind. 459 in support of his statement and *Davis v. Comm.,* 13 Bush (Ky.) 318, 322, and *Russell v. State,* 66 Ark. 185, as opposed. He, of course, did not cite *Rex v. Wheat, supra,* which is contra to his statement, since it was not decided until some years later. As we have already stated, the present weight of authority in this country is against the views seemingly taken by Mr. Hochheimer.

This court has not previously been called upon directly to decide in a prosecution for bigamy whether or not a belief on the part of the defendant that he and his first wife have been divorced constitutes a good defense. Expressions of this court in prior cases point clearly to a view in accord with that held by the majority of American cases and also that of *Rex v. Wheat, supra.*

There is quite a full discussion of the subject of a mistaken belief based upon a mistake of law in *Geisselman v. Geisselman,* 134 Md. 453, 107 A. 185 (1919) which was a divorce case. The first wife had been convicted of a crime and sentenced to imprisonment. The husband thought that this left him free to remarry, and he proceeded to do so in Maryland, and the second marriage was consummated. He was indicted for bigamy, pleaded guilty and was paroled. He sued for a divorce from his first wife, but his bill was dismissed on the ground of recrimination. The decree of dismissal was affirmed. This court held that the husband's mistake of law did not excuse

---

2. As to the English law since *Wheat,* see Williams, *Criminal Law* (2nd Ed., 1961), pp. 176-184.

him from the charge of adultery. In reaching this conclusion the court relied largely on the analogy to bigamy cases and dismissed a number of authorities in other jurisdictions, including *Reg. v. Tolson, supra.* It reviewed a number of authorities and found the majority rule in this. country to be opposed to *Tolson,* and declined to adopt the minority or *Tolson* view. This court, after referring to American authorities, said (134 Md., at 458) : "There would seem to be no doubt that under the above authorities, and others might be cited, the appellant could not have escaped conviction for bigamy * * *." The court left open the possibility that under some circumstances a bona fide mistake of fact under which a man had married a woman other than his real wife and had cohabited with her might be a bar on the ground of recrimination to his obtaining relief in a suit against his first wife if he was justified in his mistaken belief and had not been negligent or lax in endeavoring to ascertain the actual facts before entering into the second marriage (134 Md., at 462), but held that in the *Geisselman* case the mistake was one of law and not one of fact, and took the general rule that a mistake of law will not excuse one charged with adultery (134 Md., at 463).

In *Slansky v. State,* 192 Md. 94, 63 A. 2d 599, a man had gone to another state and had there obtained a divorce from his first wife. A few days later he married his second wife in Maryland and was thereafter prosecuted for and convicted of bigamy. He relied upon the divorce obtained elsewhere, but under advisory instructions from the court (which were not challenged) as to the effect of the decree of another state and with regard to domicile, the defendant was found guilty. His principal contention on appeal was that full faith and credit had been denied to the decree of a court of a sister state (Nevada). The conviction was affirmed largely on *Williams v. North Carolina,* 325 U. S. 226, since there was evidence in the Maryland trial court upon which the jury could properly find that the defendant had not acquired a domicile in the other state. This Court stated (192 Md., at 110) : "Appellant assumed the risk that Maryland might justifiably find that he had not been domiciled in Nevada." This court did not directly pass upon the question of the defendant's belief in the validity of

the Nevada divorce, but seems to have assumed in the statement just quoted that it was not material.

In *Wright v. State,* 198 Md. 163, 81 A. 2d 602, in which it was aptly suggested by the trial judge that the offense was "trigamy," rather than bigamy, the State alleged as the first and valid marriage that of the defendant and one Imogene Bissell in Elkton, Maryland, in 1947, and as the bigamous marriage that of the defendant and one Jean Dunn in Hyattsville, Maryland, in 1948. The defendant asserted that he had previously been married to one Dell Thompson in Florida in 1941, that this marriage had not been dissolved prior to his Elkton marriage in 1947, and that the Elkton marriage was therefore a nullity. The case turned largely on presumptions and burden of proof or of going forward with proof and on the admissibility of evidence. This Court sustained the theory on which the defense was based—that a valid first marriage must be proved in order to establish the second as bigamous and in discussing this aspect of the case (which is more or less the converse of the present case), said: "The essential question now before us is whether the marriage in Elkton was in fact valid. The question is not whether [the] defendant assumed that it was valid or whether he entered into it without apparently being concerned whether it was valid or not." (198 Md., at 171.) In the following paragraph the Court said: "Where the first marriage and the continuance of the life of the first wife are proved, the burden is cast upon the accused to show that a divorce was granted before the second marriage was performed." In *Wright* the conviction was reversed and a new trial was awarded because of the insufficiency of the proof of the validity of the Elkton marriage.

The problem of statutory construction is primarily whether or not a requirement of *mens rea* to establish guilt should be read into the statute. The question of the construction of criminal statutes is discussed generally in *Clark & Marshall, op. cit. supra,* § 5.10 and in *Morissette v. United States,* 342 U. S. 246, which is extensively quoted in this section of *Clark & Marshall.* See also *Ford v. State,* 85 Md. 465, 37 A. 172, in which the mere possession of lottery tickets was held to be an offense under what is now § 362 of Art. 27 of the Code (1957), and

*Jenkins v. State,* 215 Md. 70, 137 A. 2d 115, in which Judge Prescott recently cited and reviewed many authorities. That case involved possession of narcotics. It was held unnecessary under the statute there involved for the State to prove that the defendant knew that the contents of a package, which he admittedly had in his possession, consisted of a narcotic (cannabis). In *Geisselman* this Court quoted with approval a statement that in the United States, "the crime of bigamy is considered to be on a par with various police regulations where criminal intent is unnecessary." In the light of the majority American rule and of the prior expressions of this Court—particularly in the *Geisselman* case, both that just quoted and that with regard to the social purposes underlying the bigamy statute—and in view of the fact that honest belief is not one of the exceptions from liability enumerated in the statute itself, we think that even if the appellant had entertained a bona fide belief that his first wife had divorced him before his second marriage, and even if this erroneous belief were to be regarded as a mistake of fact and not of law (which we do not decide), this would not constitute a defense to the charge of bigamy under our statute.

On the facts of this case we think that the appellant has failed to establish a bona fide and reasonable belief that he was divorced, and that his belief was not due to laxness or lack of diligence on his part to ascertain the facts. Such a belief is, we think, required to establish a successful defense even in those jurisdictions which recognize a genuine though mistaken belief as an excuse from liability under a bigamy statute, even where the mistake is one of fact. He made no real effort to ascertain the facts, even on his own statements. See 2 *Wharton's Criminal Law and Procedure, supra,* at § 721, at pp. 530-31; Perkins on *Criminal Law* (1957), pp. 835-40. See, however, Williams, *Criminal Law* (2nd Ed., 1961), pp. 176-184, dealing with the English law, and criticizing *Rex v. Wheat, supra,* severely and casting doubt on its continued authority.

The last contention raised by the appellant is with regard to the admission of his past criminal record. It is not properly before us for review since there were no objections at the trial to the admission of this evidence; Rule 885; *Davis v.*

*State,* 189 Md. 269, 55 A. 2d 702; *Daniels v. State,* 213 Md. 90, 106, 131 A. 2d 267; *Green v. State,* 227 Md. 296, 298, 176 A. 2d 228; *Edmondson v. State,* 230 Md. 66, 185 A. 2d 497. Even if it were before us, however, the appellant's cause would not be aided. He took the stand and thereby put his credibility in issue. The admission of evidence of convictions for larceny, automobile larceny, burglary, embezzlement and the unauthorized use of an automobile was, we think, within the proper discretion of the trial court. *Linkins v. State,* 202 Md. 212, 96 A. 2d 246; *Taylor v. State,* 226 Md. 561, 174 A. 2d 573. Evidence of his conviction for vagrancy was of doubtful admissibility, but did not necessarily constitute an abuse of discretion. Though evidence of convictions of juvenile offenses was not admissible, its admission would constitute only harmless error.

*Judgment affirmed.*