472 A.2d 90

**Dwyome A. CARROLL aka Dwayne A. Carroll**

v.

**STATE of Maryland.**

**No. 613, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

March 7, 1984.

Jack B. Rubin, Baltimore, with whom was Sally C. Chester, Baltimore, on brief, for appellant.

Valerie V. Cloutier, Asst. Atty. Gen., with whom were Stephen H. Sachs, Atty. Gen., of Maryland, Kurt L. Schmoke, State's Atty. for Baltimore City and Brian Murphy, Asst. State's Atty. for Baltimore City on brief, for appellee.

Argued before LISS, GARRITY and GETTY, JJ.

GARRITY, Judge.

The appellant, Dwyome A. Carroll (Carroll), also known as Dwayne A. Carroll, was convicted at a non-jury trial in the Circuit Court for Baltimore City of possession of heroin and possession of cocaine. Carroll received an eight year sentence for possession with intent to distribute cocaine and a four year concurrent sentence for possession of heroin.

At approximately 11:30 a.m. on July 21, 1983, several Baltimore City police officers executed a search and seizure warrant of Room 2 of the New Motel in Baltimore. Pursuant to that warrant which had been issued by District Court Judge Blanche G. Wahl, the police forced entry into the room wherein they discovered, inside a dresser drawer, receipts in the name of Mr. and Ms. Johnson for July 17, 19, and 20 of 1982 for the rental of Rooms 2 and 48. No receipts were found dated July 21, 1982. The receipts were

seized and subsequently accepted into evidence over objection.

While in Room 2, the police also discovered in a dresser drawer a plastic bag containing rice, a small plastic bag in which there was a residue of white powder, another small plastic bag with an unidentified residue, a roll of tape, a razor blade, and a piece of tin foil. None of these items were subjected to chemical analysis.

In Room 2, underneath a wall plate which covered the aperture for a light switch, the police recovered seven aluminum packets of white powder, three glassine bags of white powder, and one torn glassine bag of white powder. Chemical analysis revealed that seven of the packets contained cocaine and that one contained heroin. Fingerprints were not lifted from these items or from the interior of Room 2.

Then, without a search and seizure warrant for Room 48, the police entered that room after opening the door with a key obtained from the hotel manager. There were three people inside the room, one of whom was identified as Carroll. Carroll was then arrested. No keys to either Room 48 or Room 2 were found on the appellant's person.

At trial, Detective Paul Miller of the Baltimore City Police Department testified over objection that at the time of the arrest, the desk clerk, Cora Lee Taylor, identified Carroll as the person who had rented both Room 2 and Room 48 numerous times on a daily basis.[1]

Taylor's testimony at trial against Carroll was inconsistent. On direct examination, she testified that Carroll, whom she identified in Room 48 on the day of his arrest, had rented Room 2 from her at approximately 11:15 a.m. on July 21, 1982. But, on cross-examination, Taylor testified that on July 21, 1982, she was at that time not certain that the person she identified in Room 48 as Carroll was the same person who rented Room 2 for that day. On redirect,

---

1. Ms. Taylor testified that she rented all "stay-overs" and that check-out time was 11:00 a.m.

however, Taylor stated that she was positive on the day of the arrest, that the person she identified as Carroll at that time was the person who had rented Room 2 from her earlier that day. On recross-examination, Taylor testified that on the day of the arrest, she was certain that the man (Carroll) whom she had identified for the police in Room 48 as having also rented Room 2 from her earlier that day, was actually the man who had rented Room 2.

The search and seizure warrant, admitted into evidence over objection by defense counsel, authorized the search and seizure of a 20-year old black male called "Boo" who was approximately 5′4″ tall and weighed 130 pounds, and Room 2 of the New Motel.

On appeal, Carroll raises two issues for our consideration:

I.  Did the trial court err in denying appellant's motion to suppress where the affidavit did not sufficiently detail the unidentified informant's basis of knowledge that narcotics would be found in Room 2 of the New Motel?

II. Was the evidence sufficient to convict appellant of possession of narcotics when there was no nexus proven between the appellant and narcotics found hidden behind a light switch in an unoccupied motel room?

I.

Appellant asserts that the facts in the affidavit, upon which the warrant was based, were insufficient to substantiate its issuance in that they failed to establish probable cause to believe that narcotics were being sold at the New Motel. His paramount point is that the facts in the affidavit do not show the informant's basis of knowledge as is required under the two prong test of knowledge and reliability in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

In our opinion, this prelude runs afoul of the "totality of the circumstances" analysis of *Illinois v. Gates,* ——— U.S. ———, ———, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983), which recently supplanted the strict two prong analysis test of *Aguilar* and *Spinelli.* Under *Gates,* the determination as to whether there is sufficient probable cause to substantiate the issuance of a search warrant turns upon the totality of the circumstances in a particular case. In articulating the totality of circumstances rule, the Court stated in *Gates* that:

> [t]he task of the issuing magistrate is simply to make a practical common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed. at ———, 103 S.Ct. at 2332, 76 L.Ed.2d at 548.

Accordingly, our standard of review as to the issuance of a search and seizure warrant is simply whether the magistrate had a substantial basis, under the totality of the circumstances set forth in the affidavit, to make a practical, common-sense judgment that there was a fair probability that contraband or evidence of a crime would be found in a particular place. *Ramia v. State,* 54 Md.App. 260, 458 A.2d 487 (1983), *Brown v. State,* 57 Md.App. 186, 469 A.2d 865 (1984), *Gipe v. State,* 55 Md.App. 604, 466 A.2d 40 (1983).

The relevant facts and circumstances which established the probable cause upon which the search and seizure warrant was based were set forth as follows in the affidavit that accompanied the warrant:

> Your affiant spoke with a confidential reliable informant who has supplied information in the past six months which has resulted in three street arrests for narcotics and one search and seizure warrant for narcotics. In all of

these instances narcotics were recovered as the informant stated that narcotics would be found and persons were arrested. This informant has been a drug user for the past few years and is familiar with heroin, its appearance, methods of packaging, usage and effect.

The informant told your affiant that during the week of 7 July 1982 he/she purchased heroin from a Black male known to him/her as "Boo" who the informant described as about twenty years old, five feet four inches and 130 lbs. The informant stated that he/she has purchased heroin from "Boo" several times at 4601 E. Monument St., the New Motel and each time used the heroin and received the same euphoric effect that he/she is used to receiving when using heroin. The informant further stated that each day "Boo" would be selling heroin from a different room at the New Motel, 4601 E. Monument St. On 12 July 1982 "Boo" sold heroin to the informant from room 2 at the New Motel, 4601 E. Monument Street and the informant stated that he/she used the heroin and again received the same euphoric effect that he/she knows to be heroin.

Your affiant conducted an observation at the New Motel, 4601 E. Monument St. on several occasions and noted that numerous known drug addicts were loitering at 4601 E. Monument St. the New Motel and some would gather in certain rooms on the premises and after short periods of time would leave the area.

On 12 July 1982 your affiant conducted an observation at the New Motel, 4601 E. Monument St. and observed many known drug addicts loitering in the area of room 2 at the New Motel. Many persons were observed entering room 2 and after a short stay leaving the area. This activity is known by your affiant to be indicative of narcotic activity.

Numerous complaints of narcotic activity at the New Motel, 4601 E. Monument St. have been received at the narcotic office of the Baltimore Police Department in the past several weeks by several different officers. The

people calling were not identified and stated the names of different persons who were dealing narcotics. Your affiant personally spoke to one concerned citizen who stated that "Boo" was selling heroin at the New Motel during the first week of July 1982.

Many arrests for narcotics including heroin have been made at 4601 E. Monument St., the New Motel along with numerous arrests for prostitution which is one of the ways female drug addicts make money to purchase drugs.

Your affiant is unable to check the motel register to obtain information concerning the identity of "Boo" as the investigation could be comprimised (sic) as the New Motel is known on the street as the place to go for illegal activity as the management allows certain activity to take place. Also it has been your affiants experiance (sic) that persons entering motel rooms for the purpose of conducting illegal activity use false names and identification where identification is required. On previous investigations your affiant was advised by the management of the New Motel that guests did not produce identification.

On 21 July 1982 your affiant spoke with the confidential informant who stated that he/she purchased heroin from "Boo" at 4601 E. Monument St., the New Motel, room 2 on 21 July 1982 and again used the heroin and received the euphoric effect that he/she knows to heroin.

We think the fact that the affidavit established the informant's basis of knowledge to be a personal purchase of heroin from the occupant of Room 2 of the New Motel on July 21, 1982, coupled with the fact that the affidavit also ascribed verified tips as to narcotic activities in the area of the New Motel six months earlier, recent complaints of narcotic sales in the New Motel, and fresh observations by the affiant police officer regarding suspected narcotics sales around Room 2 of the motel indicates that there was a fair probability that narcotics sales were being consummated in Room 2 of the New Motel, and that evidence of narcotics would be found therein. Consequently, we hold that the totality of the facts and circumstances in the affidavit

constituted sufficient basis for the issuing judge to conclude that there was a fair probability that narcotics were being distributed from Room 2 of the motel, and that evidence of contraband would be found therein.

## II.

Appellant opines that his conviction should be overturned because the testimony failed to show that he exercised dominion and control over narcotics concealed inside the wall of Room 2 in the New Motel. He further asserts that his conviction is unfounded in the absence of testimony to show that he had knowledge of the narcotics in Room 2 and thereby intended to distribute them.

We think the evidence was sufficient to establish a rational inference that Carroll was in possession of the room, thereby exercising dominion and control over it and the narcotics therein. That evidence further establishes Carroll's knowledge of the narcotics and his intent to distribute them. Consequently, we shall sustain the conviction.

On appeal in a non-jury criminal case, our function is simply to determine from the evidence, and proper inferences to be drawn therefrom, whether that evidence was legally sufficient to warrant the trial court's finding that the accused was guilty beyond a reasonable doubt. *Bury v. State,* 2 Md.App. 674, 236 A.2d 751 (1968); *Trout v. State,* 3 Md.App. 259, 238 A.2d 281 (1968); *Darby v. State,* 3 Md.App. 383, 239 A.2d 605 (1968). Accordingly, the task before us in the instant case is to first determine whether the State adduced evidence sufficient to show directly or by rational inference that Carroll did in fact exercise some dominion and control over the narcotics in Room 2 of the New Motel. Generally, the rule is that

[B]efore the State may obtain a conviction it must adduce evidence to meet the test of legal sufficiency; that evidence must show directly or support a rational inference that the accused did in fact exercise some dominion or control over the prohibited narcotic drug in the sense

contemplated by the statute, i.e., that she exercised some restraining or directing influence over it. *Garrison v. State,* 272 Md. 123, 142, 321 A.2d 767, 777 (1974).

"Possession" in its clear and ordinary meaning under the narcotic statute denotes "the act or condition of having in or taking into one's control or holding at one's disposal." *Williams v. State,* 7 Md.App. 5, 252 A.2d 880 (1969); *Braun v. State,* 230 Md. 82, 89–90, 185 A.2d 905 (1962), *Bryant v. State,* 229 Md. 531, 536; 185 A.2d 190 (1962), *Stewart v. State,* 1 Md.App. 309, 318, 229 A.2d 727 (1967). Actual physical possession is not required nor is it necessary that the possession be immediate and direct. *Williams v. State* at 7 Md.App. 14, 252 A.2d 880.

Based upon the testimony of witnesses at trial as to the facts and circumstances preceding Carroll's arrest, it is clear that the trial judge quite properly and accurately inferred that the narcotics seized in Room 2 of the New Motel were in Carroll's possession.

Detective Miller, who arrested Carroll in Room 48, testified that he, Detective Lansey, who is also a member of the Baltimore City Police Department, several plainclothes officers, and other uniformed officers found several rental receipts for Room 48 and Room 2 in a dresser drawer in Room 2 of the New Motel. Amidst the receipts in that dresser drawer were consecutively numbered receipts in the name of Mr. and Ms. Johnson for the rental of Room 48 and Room 2 on July 17, 19, and 20 of 1982. In the course of his testimony, Miller explained that for purposes of identification at the time of arrest, he asked Carroll his name, but that each time he made that inquiry, Carroll gave a different name. Miller stated that Carroll did not reveal his true identity until he was booked.

Miller further testified that the Johnson's address on the rental receipt of July 17, 1982, for Room 2 was 2610 Biddle Street and the address on the rental receipt for Room 48 on that date was the same; that the receipt for both rooms on July 19, 1982, was 2610 Biddle Street, and that the address

on the rental receipt of Room 2 for July 20, 1982 was 2610 Biddle Street. Then Miller stated that the receipts of July 17, 1982, showed a check-in time of 9:15 a.m. for Room 2 and 9:20 a.m. for Room 48; that receipts of July 19, 1982 showed that check-in time for Room 2 was 11:10 a.m., and that check-in time for Room 48 was 10:30 a.m.; and that receipts of July 20, 1982, showed that check-in time for Room 2 was 11:10 a.m., and that check-in time for Room 48 was 10:40 a.m.

Detective Miller also testified that he had observed Carroll on several different occasions at the New Motel during 1982 and that approximately one week prior to Carroll's arrest, he saw Carroll at the New Motel going from room to room, talking to different people in each room. Miller recalled that during that observation, he had seen Carroll go to Room 2 and Room 48.

Thereafter, Cora Lee Taylor, the daytime hotel desk clerk, testified that on July 21, 1983, when Carroll was arrested in Room 48 and she identified him at that time, she was positive that Carroll was the person she had rented Room 2 to approximately one and one-half hours earlier on that day. Although Taylor vacillated from this position on cross-examination in that she testified that she was uncertain at the time she made the identification that Carroll was actually the person she had rented Room 2 to on July 21, 1982, she, on redirect and recross examination, confirmed her initial testimony that she was certain at the time of Carroll's arrest that he was the person who had rented Room 2 from her earlier that day.

Mr. Charles Castoro, an owner of the New Motel who was working there when Carroll was arrested, testified that payment for a room is due by noon on the day of the day of departure, and indicated in his testimony that when police questioned him on the day of Carroll's arrest as to the occupants in Room 2 and Room 48, he was uncertain as to whether they had departed.

We think that this testimonial evidence was sufficient to allow the trial judge to infer that Carroll, who had occupied Room 48 and Room 2, had not checked out of either room on July 21, 1982, before he was arrested; that Carroll had been in possession and control of Room 2; that Carroll had concealed cocaine and heroin within the wall of Room 2; and that Carroll had knowingly exercised dominion and control over those narcotics.

Although the particular facts and circumstances of a case may give rise to differing inferences and a degree of uncertainty, as to the appellant's guilt, our function is to determine whether the lower court was clearly wrong in reaching a verdict of guilt on the evidence, not to determine whether we would have reached a different conclusion from that of the trial court. *Nichols v. State,* 5 Md.App. 340, 247 A.2d 722 (1968). We are persuaded that the evidence was sufficient to sustain the convictions.

JUDGMENTS AFFIRMED.

COSTS TO BE PAID BY APPELLANT.