## PALACOROLLA *v.* STATE

[No. 21, September Term, 1963.]

436

*Decided October 9, 1963.*

The cause was argued before BRUNE, C. J., HENDERSON, HAMMOND, PRESCOTT, HORNEY, MARBURY and SYBERT, JJ.

*Joseph G. Koutz,* for appellant.

*Jacque E. Leeds, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, William J. O'Donnell* and *William Bricker, State's Attorney* and *Assistant State's Attorney,* respectively, for Baltimore City, on the brief, for appellee.

HAMMOND, J., delivered the opinion of the Court.

Appellant, a sixteen-year-old boy, was convicted by Judge Oppenheimer, sitting in the Criminal Court of Baltimore, of larceny of an automobile and of sniffing glue.

He entered an appeal in proper person and in his petition to prosecute the appeal as an indigent gave as reasons for the taking of the appeal that witnesses his lawyer had talked to and who could have proved his innocence did not appear in court as they had said they would. In this Court appellant, through his counsel, claims that the trial court prejudicially restricted cross-examination of the policeman who testified he saw appellant driving the stolen car, that the evidence was insufficient in law to sustain the conviction of glue sniffing, and that appellant was inadequately advised of his constitutional right to the compulsory attendance of a witness and did not waive the right.

The owner of a "blonde color" 1963 Chevrolet, bearing license number AC:20:72, parked it about 2:45 p.m. on December 4, 1962, to go into a store at Lloyd and Lombard Streets. When he returned, the car was gone. At 3:05 p.m. the same day, Officer Strezelezyk was on duty directing school children at Fait and Linwood Avenues, acting as a replacement for a school crossing guard who had quit. As he turned from directing children across Fait Avenue to control Linwood Avenue, he noticed a "silver-gold color" 1963 Chevrolet being driven south on Linwood Avenue by a boy he knew as "Jo-Jo" (later identified by him as the appellant), with a much younger

boy in the seat beside him. The officer "copied down" the license number, which was AC:20:72 and twenty-five minutes later, when his special duties were over, went to a call box and called the police department automobile squad to find if the Chevrolet was reported as missing or stolen. There was nothing on record as to the car at that time. The next morning the officer saw on the lookout sheet in the station house that the car had been reported as stolen the day before from Lloyd Street. He then found out that Jo-Jo lived at 303 S. Collington Avenue and went to the house. He made his report on the case and turned it in to his superior officers. The next day two other officers "picked up" Jo-Jo for glue sniffing.

Officer Strezelezyk testified he had known appellant for some time, having encountered him at the Police Boys' Camp where he was called by the nickname Jo-Jo and having talked to him several times around the school he attended. He had no question but that Jo-Jo was driving the stolen car.

The officer was asked on cross-examination why he "waited two days" to have the appellant arrested. He explained that the auto squad had no record of the car on December 4 and that on December 5 he made as much of an investigation as his previously assigned duties permitted. He was then asked if he did not know that Jo-Jo's stepfather was a policeman at the Southeastern Station. Judge Oppenheimer sustained an objection, on the ground that the knowledge, if it existed, was immaterial. Counsel for appellant did not pursue the matter and, after one more question as to whether the officer had had "any trouble" with Jo-Jo at Boys' Camp (to which the answer was no), ended the cross-examination.

Appellant concedes the testimony of a single eye witness, if believed by the trier of fact, is sufficient to support a conviction; *Booth v. State,* 225 Md. 71; *Bailey v. State,* 226 Md. 353; and that Officer Strezelezyk's testimony that Jo-Jo was driving the stolen car, twenty minutes after it had been stolen, if credible, was enough at least in the absence of a reasonable explanation of rightful possession to sustain a conviction of larceny by appellant. He argues that the officer did not arrest appellant for two days because he had a doubt that the driver of the car he saw was appellant and apparently suggests the im-

plication that if Strezelezyk did know that Jo-Jo's stepfather was a policeman at the same station house, he could have spoken to him and cleared up his doubts much sooner. It is said the question went to the officer's credibility and the refusal of the court to allow it to be answered was prejudicial. Wide latitude should be given on cross-examination and undue restriction well may bring about prejudice. We think there was no actual prejudice here. The officer's explanation of the reasons for the delay in charging appellant with larceny obviated any inference of doubt or uncertainty in his identification of which he said he was positive.

The officer referred to in the question, the record reveals, was not then Jo-Jo's stepfather, no longer being married to his mother. He well may have had no knowledge which could have aided Officer Strezelezyk in the performance of his duties. Appellant had made the point of the effect of the delay in arrest on the certainty of identification and credibility earlier in the cross-examination.

The appellant urges that prejudice in refusing to allow the question may be inferred because no aid was given Judge Oppenheimer in determining the veracity of the officer or his accuracy of identification by either side asking questions as to "the speed of the vehicle when seen by the officer, its proximity to him, the length of time the car was in his sight nor any other such matter as would bear on the question of possible mistaken identity."

The answer would seem to be that the car was going slowly enough, was close enough and in sight long enough for the officer to see not only the identity of the driver but its year, make, color, and the approximate age and the sex of the passenger in it, and to note correctly its license number. The car went by him as he stood in the center of the intersection and he observed that it was one foot over the white center line but there is no hint that it was speeding.

We find there was credible testimony to support the conviction of larceny, and we can see no affront to appellant's rights and no prejudice to him in the fact that Officer Winter, his former stepfather, was not in court at his trial, although he had been summoned.

We said in *Copeland v. Wright*, 188 Md. 666, that an accused has a constitutional right to summon witnesses but that their attendance cannot always be guaranteed, and suggested:

> "Under proper circumstances if the request is made a trial can be delayed while further efforts, are made to get witnesses whose appearance is considered essential to the defense."

As in the *Copeland* case, the appellant did not ask for delay in the trial. Indeed, his counsel told the court that Officer Winter had been summoned but was not in court and said: "I advised the defendant that his witness was not here and he wanted to go on with the case even though the witness wasn't here." The accused could voluntarily and knowingly agree to go on with the trial without his witness as the record indicates he did. To be entitled to a delay, had he requested it, he must have shown the court that the witness could be procured within a reasonable time (as he almost certainly could have in this instance) and that his evidence was competent and material and that the case could not be fairly tried without it. *Bryant v. State*, 232 Md. 20; *Taylor v. State*, 226 Md. 561. That Officer Winter's testimony would have been competent and material or that its absence made the trial unfair does not appear. The appellant relied on an alibi, part of which was his claim that Officer Winter chased him and other boys off a playground about four o'clock on the afternoon the car was stolen. The theft was at 2:45 and Officer Strezelezyk saw Jo-Jo in the stolen car at 3:05. Testimony that he was elsewhere at four would not have really aided Jo-Jo.

We think the evidence was insufficient to sustain the conviction of glue sniffing. It was only that a complaint was received, that an officer saw Jo-Jo and another boy on the street each with a bag in his hand and that Jo-Jo ran and, when apprehended, admitted he had "sniffed glue," although at the station house shortly thereafter he denied it.

No one saw the appellant actually sniffing, there was no competent testimony that he possessed proscribed glue or that he exhibited symptoms of having sniffed it. The applicable statute, Code (1962 Supp.), Art. 27, Sec. 313A, makes it a crime "to

deliberately smell or inhale such excessive quantities of any narcotic, drugs, or other noxious substances or chemicals containing any ketones, aldehydes, organic acetates, ether, chlorinated hydrocarbons, or any other substance containing solvents releasing toxic vapors, as cause conditions of intoxication, inebriation, excitement, stupefaction or dulling of the brain or nervous system," particularly finger nail polish, air plane glue or "any other substance or chemical which has the afore-mentioned effect upon the brain or nervous system when smelled or inhaled * * *."

The appellant's statement that he had sniffed glue was not a confession that he smelled or inhaled an excessive quantity of any proscribed substance or chemicals, particularly in light of the fact that he exhibited none of the symptoms referred to in the statute, and there was no other evidence sufficient to permit a finding that he had.

> *Judgment for violation of Sec. 313A of Art. 27 of the Code of Maryland (1962 Supp.), reversed; judgment on conviction of larceny affirmed.*